# MARYLAND STATE BAR ASSOCIATION, INC. *v.* FRANK

[Misc. Docket (Subtitle BV) No. 10, September Term, 1973.]

*Decided October 7, 1974.*

The cause was argued before Murphy, C. J., and Singley, Smith, Digges, Levine, Eldridge and O'Donnell, JJ.

*Henry B. Rothblatt,* with whom was *Robert H. Frank* on the brief, for respondent.

*Randall C. Coleman,* with whom was *Donald E. Sharpe* on the brief, for petitioner.

DIGGES, J., delivered the opinion of the Court.

With the institution of this disciplinary proceeding, the petitioner, the Maryland State Bar Association, Inc., seeks to have this Court impose appropriate sanctions against the respondent, Robert Harry Frank, a member of the Maryland Bar, alleging that he is guilty of "professional misconduct, bribery or other criminal activities." Specifically, the Bar Association's petition alleges:

"A On the late evening of September 21 or early morning of September 22, 1972, the defendant attempted to bribe then Deputy State's Attorney for Baltimore County, Stuart E. Hirsch, by the payment to him of the sum of Three Thousand Dollars ($3,000.00) in order to influence unlawfully Mr. Hirsch's official actions either in (a) certain criminal actions pending in Baltimore County in which the defendant Frank was acting as counsel or advisor to defendants charged by the State's Attorney for Baltimore County with the commission of certain crimes or (b) in a charge against the defendant Frank, himself, for a violation of Article 27, Section 125 (a) of the Annotated Code of Maryland (1971 Replacement Volume) which had been referred by the State's Attorney for Baltimore County to the State's Attorney for Baltimore City for possible indictment and prosecution of the defendant himself.

"B During the criminal trial against him in Kent County and in proceedings before the Grievance Committee on May 17, 1973, the defendant herein admitted the payment of Three Thousand Dollars ($3,000.00) to Mr. Hirsch for the purpose of influencing Mr. Hirsch's actions in the matter of the alleged violation of the aforesaid Article 27, Section 125 (a) of the Annotated Code of Maryland, which had been referred to the State's Attorney for Baltimore City and further admitted that he failed

to advise any responsible law enforcement agency of said payment."

Upon the filing of the petition, this Court directed, as authorized by Maryland Rule BV3 b, that the proceeding be referred to the Supreme Bench of Baltimore City for a hearing to be conducted by Judges J. Harold Grady, Basil A. Thomas and Marshall A. Levin. Following an evidentiary hearing, which was conducted with respondent and his counsel present and fully participating, that panel caused the record of those proceedings, which included its recommendation for disposition of the charges and reasons therefor, to be transmitted to this Court. Rule BV5. The record reports that the judicial panel, after reviewing critically all of the evidence, factually concluded that:

"The evidence in this matter is clear and convincing that Respondent was guilty of professional misconduct. He attempted to bribe a public prosecutor by paying said prosecutor $3,000.00 in order to influence said prosecutor unlawfully and unethically in either (a) the criminal indictments then pending against Jones, Everson and Pickett wherein Respondent was either counsel or advisor to said defendants and/or (b) a charge against Respondent himself for a violation of Article 27, Section 125 (a) of the Annotated Code of Maryland which had been referred by the State's Attorney for Baltimore County to the State's Attorney for Baltimore City for possible indictment and prosecution of Respondent himself."

The hearing court, after determining that:

"Such actions constitute a violation of Canon 1, DR 1-102 Misconduct (A) A lawyer shall not: . . . (3) engage in illegal conduct involving moral turpitude or (4) engage in conduct involving dishonesty, fraud, deceit or misrepresentation or (5) engage in conduct that is prejudicial to the administration of

justice or (6) engage in any other conduct that adversely reflects on his fitness to practice law . . .",

recommended the disbarment of the respondent from the further practice of law in this State. After this Court received the record, Frank promptly filed exceptions (Rule BV5 b 2) which put forth a number of reasons in support of his assertion that disbarment is not warranted.

The respondent first contends that the panel committed error when it denied his motions to dismiss the petition because of failure both (a) to comply with the statutory time requirements of Maryland Code (1957, 1968 Repl. Vol.), Art. 10, §§ 12 and 13, and (b) to provide him with a "speedy trial."

In support of respondent's first point, he urges that these Code sections, which require a bar association or state's attorney "to prosecute the charges . . . on a day specified [by order of court] . . . , which day. shall not be less than fifteen or more than sixty days from the date of said order," were not followed. Frank correctly points out that the hearing before the panel of judges was held more than sixty days (approximately five months) after the disbarment petition was filed. He then relies on the wording of §§ 12 and 13 and our language which discussed these statutory provisions in *Balliet v. Balto. Co. Bar Ass'n,* 259 Md. 474, 270 A. 2d 465 (1970) to support his contention that when the charges were not "prosecuted" within the sixty-day period, the petition should have been dismissed. We conclude, however, that neither our opinion in *Balliet* nor these Code provisions dictate such a result.

The respondent's reliance on our decision in *Balliet* is misplaced, as the language we used in that case is inapposite to the argument being made here. This is so as we determined in *Balliet* that, even if the required sixty-day time period under § 12 is also applicable to a petition filed by a bar association pursuant to § 13, the disbarment hearing there was conducted within that statutory period. We point out that this conclusion was reached in that prior case only after making the following assumptions concerning §§ 12 and 13:

"1) this oblique statutory phraseology imposes a sixty day prosecution time limit on the very same bar association which filed the petition initially, 2) this unique requirement is mandatory rather than directory, and 3) the procedural aspects of both sections have not been superseded by Rules BV4 and 5 (where there are no specific time limits) . . . ." 259 Md. at 477.

While it is true that the word "shall" appears in the statute as it pertains to the sixty-day time limitation, nevertheless, after again making the first and third assumptions mentioned in *Balliet* and further assuming that the sixty-day limit refers to completion rather than initiation of "prosecution," we now hold that this time check is not mandatory but directory, and thus there is no loss of jurisdiction to pass upon the bar association's petition. Although, ordinarily the use of the word "shall" indicates a mandatory provision and therefore it is presumed that the word is used with that meaning, this is not so if the context indicates otherwise, as we believe it does here. *Ginnavan v. Silverstone*, 246 Md. 500, 505, 229 A. 2d 124 (1967). Though not controlling, we think it is of some significance in this regard that the language of the statute provides no penalty for failure to act within the time prescribed. Of more importance, it is clear that the broad policy of the law regulating conduct of attorneys authorized to practice law in this State is designed for the protection of the public, *Maryland St. Bar Ass'n v. Agnew*, 271 Md. 543, 549, 318 A. 2d 811 (1974), and that purpose would be largely vitiated if respondent's restrictive interpretation were to prevail. These assertions justify the conclusion, we think, that the legislature intended the time direction of the statute to be directory and not mandatory. This result is in accord with the previous decisions of this Court which have considered the use of the word "shall" to be directory when used in similar statutes or rules. See *Pressley v. Warden*, 242 Md. 405, 406-07, 219 A. 2d 25 (1966) (judge did not render decision within two months after case was argued or submitted as required by Art. IV, § 23 of the Maryland Constitution and

by Rule 18 a); *Holt v. Warden,* 223 Md. 654, 657, 162 A. 2d 743 (1960) (sentence not passed within two-month period); *Myers v. State,* 218 Md. 49, 51, 145 A. 2d 228 (1958), *cert. denied,* 359 U. S. 945 (1959) (writ of error *coram nobis* not ruled on until after two months had elapsed); *Snyder v. Cearfoss,* 186 Md. 360, 370, 46 A. 2d 607 (1946) (ruling on a motion for new trial not given until two months after the date of hearing).

We also reject the suggestion that the respondent was denied a "speedy trial." While it is true that both Article 21 of the Maryland Declaration of Rights and the sixth amendment of the federal constitution guarantee a speedy trial to all who are criminally accused, each of these provisions relates expressly to criminal proceedings and they are therefore inapplicable to civil matters, *Wood v. Director,* 243 Md. 731, 223 A. 2d 175 (1966); *McCloskey v. Director,* 230 Md. 635, 637, 187 A. 2d 833, *cert. denied,* 374 U. S. 851 (1963), including disciplinary proceedings against an attorney. *Balliet v. Balto. Co. Bar Ass'n, supra* at 478; *Braverman v. Bar Assn. of Balto.,* 209 Md. 328, 336, 121 A. 2d 473, *cert. denied,* 352 U. S. 830 (1956). Additionally, although Article 19 of the Declaration of Rights gives a civil litigant the right to a trial "speedily without delay," it is clear that this has been accorded the respondent in this case. The record shows that though the bar association was ready to proceed with the hearing at all times after the petition was filed, the five-month delay, from the filing of the initial petition on September 12, 1973 to the hearing before the panel on February 19, 1974, even assuming that this time lapse is long enough to somehow suggest an intrusion on the respondent's rights, was occasioned at the specific request of the respondent for a continuance to obtain counsel and to have the panel consider his numerous and successively filed motions. In any event, the respondent has not attempted to demonstrate prejudice by this respite, about which he made no request to foreshorten; he merely makes a naked assertion that he was denied a "speedy trial." And, in further answer to Frank's contention, the respondent here will not be permitted to complain of the action or inaction of

others when he was the cause of the pause that ensued. *State v. Musgrove*, 241 Md. 521, 532, 217 A. 2d 247 (1966).

The respondent next asserts that since he was found not guilty under a criminal indictment in the Circuit Court for Kent County of the same charges which are being made in this disciplinary proceeding, this action cannot be maintained because to do so would place him in jeopardy for the second time. Though Frank concedes that a disciplinary proceeding is not a criminal prosecution, *Balliet v. Balto. Co. Bar Ass'n, supra*, he, nevertheless, argues that since it is "criminal or quasi-criminal in nature" the identical rules should apply as to the guarantee against being placed twice in jeopardy for the same offense. We do not agree. Initially, we point out that the petition in this case does not charge the respondent with having been convicted of a crime (BV 4 f 1), but instead it charges him with engaging in unprofessional conduct comprising the same acts alleged in the criminal proceeding. If not all, certainly the vast majority of this country's courts support the conclusion that the principles of double jeopardy or res judicata are no bar to a disciplinary proceeding which follows the disposition of a criminal indictment, though based on substantially the same conduct. See, *e.g., In re Echeles*, 430 F. 2d 347 (7th Cir. 1970); *In re Pennica*, 36 N. J. 401, 177 A. 2d 721 (1962); *In re Browning*, 23 Ill. 2d 483, 179 N.E.2d 14 (1961); 123 A.L.R. 779 (1939); 7 Am.Jur.2d, *Attorneys at Law*, § 57 (1963); *H. Drinker, Legal Ethics* 37 (1963). We agree with the Supreme Court of New Jersey in *In re Pennica, supra*, when it reasoned that res judicata cannot apply to disciplinary proceedings which follow an acquittal of criminal charges based on substantially the same conduct because

> "not only are the parties different but the purposes of the two proceedings are different. In the disciplinary matter, the primary purpose is not to punish an offender; it is to protect the public against members of the bar who are unworthy of the trust and confidence essential to the relationship of attorney and client; it is to ascertain whether the conduct of the attorney involved has

demonstrated his unfitness to practice law, and if so to deprive him of his previously acquired privilege to serve as an officer of the court. [citations omitted] Moreover, the *quantum* of proof required to warrant discipline or disbarment is different from that demanded for conviction of a criminal charge." *Id.* at 730.

To a like effect is *In re Echeles, supra,* where the court said:

"While perhaps in a disbarment proceeding when the conviction of a felony is relied on as the sole ground for disbarment, there may be plausibility for the view that an acquittal or reversal should be conclusive and preclude disbarment merely on that ground, yet as a general rule the mere acquittal of a crime will not be a bar to a suspension of the attorney's right to practice or his disbarment for unprofessional conduct, based upon the same acts or conduct involved. A conviction may be prevented by technicalities or other matters not determinative of the merits of the case. Accordingly, it is the general rule that the acquittal of an attorney in a prosecution for criminal acts constitutes no bar to suspension or disbarment proceedings based on the same acts and attendant circumstances or conduct involved therein." *Id.* at 352.

Although this question has not been directly decided in Maryland, the dictum in *Scott v. State,* 238 Md. 265, 208 A. 2d 575 (1965), indicates agreement with this conclusion, as there Judge Hammond, speaking for the Court, observed:

"It has been generally held that the acquittal of a member of the bar on a charge of crime is not res judicata in a subsequent disciplinary proceeding based on substantially the same charge or conduct." *Id.* at 277.

Frank's next group of objections pertains to the procedures utilized before the Grievance and Executive Committees of the Bar Association prior to the institution of

this action. He contends that his motion to dismiss should be granted as

> "there were no specific accusations placed against him by [(the motion to dismiss actually uses the word "before")] the Grievance Committee; that there were no witnesses that appeared to testify against him; because he had no opportunity to cross-examine the witnesses before the Grievance Committee; and because the Executive Committee heard evidence and made recommendations and that no appearance was granted to the respondent to be present at that stage of the proceedings, thereby denying the respondent his constitutional rights."

The first of these objections is rejected as it is unsubstantiated by the record. Contrary to the respondent's contention, this record shows that there were accusations against him of unprofessional conduct being considered by the Grievance Committee. These accusations stemmed from the facts disclosed at the criminal trial in Kent County in which the respondent was tried on charges of bribery and attempted obstruction of justice. Furthermore, the record also shows that Frank and his counsel were informed of the nature of the complaint being investigated, furnished a copy of the criminal trial transcript, and given an opportunity before the Grievance Committee to "examine and controvert" that complaint. Rule BV2 b 1.

As to the respondent's second and third asserted procedural flaws, concerning the lack of witnesses appearing in person against him before the Grievance Committee, and his consequent inability to cross-examine them, we point out that the evidence the Committee relied upon in making its recommendation that disciplinary proceedings be instituted, came largely if not completely from the transcript of the record in his criminal trial. We see nothing wrong with using documentary evidence as the basis for a Grievance Committee recommendation. In any event, this very record which was before the Committee showed that in fact the

respondent extensively cross-examined all of the witnesses appearing against him during the course of that criminal trial.

Finally, the respondent's fourth contention fails since there was no way he could have attended the type of "Executive Committee" hearing from which he claims he was excluded as no such evidence-taking meeting was ever conducted by the Board of Governors of the Bar Association (executive council), nor is there any requirement that there be one.

Moreover, in answering collectively this group of contentions, we observe that because the proceedings conducted by the Grievance Committee, under Rule BV2, are investigatory in nature (where "the rules of evidence need not apply," BV2 b 1) and are designed to aid in the determination as to whether disciplinary action should be instituted, the matter at this stage may be likened to proceedings conducted by a grand jury in criminal cases, *Ex Parte Griffith*, 278 Ala. 344, 178 So. 2d 169, 175 (1965), *cert. denied*, 382 U. S. 988 (1966). And, as respondent here was clearly afforded notice and opportunity to defend, essential elements of due process, *Matter of Easton, Incompetent*, 214 Md. 176, 188, 133 A. 2d 441 (1957), following the institution of disciplinary proceedings in this Court, we see no constitutional due process impediment to respondent's disbarment stemming from this group of objections.[1]

The respondent next states that the panel's findings of fact are not supported by the evidence and accordingly should be disregarded by this Court. However, based on our independent and detailed review of the complete record in this case, we conclude that the factual determinations of the hearing court, including its resolution of the conflict that exists in the testimony, particularly between that of the respondent and Mr. Hirsch, the Deputy State's Attorney, is

---

1. Without deciding whether Rule BV4 b is an additional basis on which we can reject respondent's procedural objections, we think it is appropriate to draw attention to that rule which states: "[t]he hearing of charges shall not be stayed or challenged by reason of any procedural defects alleged to have occurred prior to the filing of charges."

fully supported by clear and convincing evidence and accordingly is adopted by this Court. *Bar Ass'n v. Marshall,* 269 Md. 510, 516, 307 A. 2d 677 (1973).

By the remaining contention the respondent urges that the sanction of disbarment recommended by the panel is too severe. We do not agree. As the panel in its memorandum suggests:

> "The activities of the Respondent were flagrantly prejudicial to the administration of justice. They involved an intentional, serious and illegal effort to corrupt a public prosecutor and thus to subvert legitimate prosecutions of first degree murder and narcotic violations. It was conduct of the greatest moral turpitude."

We reject respondent's suggestion that his youth and inexperience can mitigate our duty to protect the public and the integrity of the legal profession when the transgression is as venal as this record shows. Accordingly, because these activities fatally reflect on the moral soundness of the respondent, and, therefore, his ability to continue as a member of the legal profession, the name of Robert Harry Frank will be stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*