## MARYLAND STATE BAR ASSOCIATION, INC. *v.* HIRSCH

[Misc. Docket (Subtitle BV) No. 4, September Term, 1974.]

*Decided April 10, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Stuart Edward Hirsch* in proper person.

*Robert E. Powell,* with whom was *Joseph I. Pines* on the answer, for the Maryland State Bar Association, Inc.

SINGLEY, J., delivered the opinion of the Court.

Stuart Edward Hirsch was admitted to the Maryland Bar in October, 1963. He was in private practice until 1968, when he became an Assistant State's Attorney for Baltimore County. On 1 July 1972, he became Deputy State's Attorney for the County and remained in that position until he was discharged on 21 July 1973.

On 7 June 1974, there was filed with this Court by Maryland State Bar Association, Inc. (the Bar Association) a petition asking that appropriate disciplinary action be taken against Mr. Hirsch. Hirsch was charged with the following violations, among others, of the Disciplinary Rules of the American Bar Association Code of Professional Responsibility: DR 1-102(A)(3) (conduct involving moral turpitude); DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit and misrepresentation); DR 1-102(A)(5) (conduct prejudicial to the administration of justice); DR 1-102(A)(6) (conduct adversely reflecting on his integrity and fitness to practice law); DR 1-102(A)(1) and DR 1-103(A) (failure to report unprivileged knowledge of violations of Disciplinary Rules and of possible criminal conduct).

As permitted by Maryland Rule BV3 b, we referred the matter for hearing and determination to a panel of judges of the Fifth Judicial Circuit of Maryland, consisting of Judges Matthew S. Evans, Ridgely P. Melvin, Jr., and James L. Wray.[1]

The matter came on for hearing on the Bar Association's petition and amended petition and Mr. Hirsch's answer and amended answer. The Bar Association submitted as exhibits transcripts of testimony in four matters, which were admitted over Hirsch's objection:

(i) Hirsch's testimony for the State in *State of Maryland v. Louis William Irvin*, Circuit Court for Baltimore County;

(ii) Hirsch's testimony for the State in *State of*

---

1. Judge Eugene Mackall Childs, originally designated as a member of the panel, disqualified himself. Judge Melvin was designated in his stead.

*Maryland v. Samuel A. Green, Jr.*, Circuit Court for Baltimore County;

(iii) A part of Hirsch's deposition in *Stuart E. Hirsch v. Samuel A. Green, Jr.*, United States District Court for the District of Maryland; and,

(iv) Hirsch's testimony and that of his witnesses at a hearing before a panel of the Committee on Grievances of the Bar Association, *In the Matter of Stuart E. Hirsch.*

The evidence before the three-judge panel was that in June, 1972, when Mr. Hirsch was an Assistant State's Attorney for Baltimore County under State's Attorney Samuel A. Green, Jr., and a vacancy occurred in the office of the Deputy State's Attorney, Hirsch applied for the position. Green told him that the job was his, that his salary would be increased from $12,000.00 to $17,000.00, but that Hirsch was expected to pay Green $1,000.00. After Hirsch was sworn in, he paid Green $500.00 in cash. Later, Hirsch gave Green two $100.00 tickets to a fund raising dinner, followed by a check for $200.00, which, at Green's request, Hirsch charged, apparently as an expense, to a divorce case in which Hirsch had participated in his private practice. The final $100.00 was forgiven when, according to Hirsch, Green was permitted to use his apartment "for sexual purposes."

According to Hirsch's testimony at the Green trial (ii, above), Hirsch, testifying as a prosecution witness, admitted that he had been guilty of "conspiracy to obstruct justice, bribery, false pretenses, two counts of false pretenses, possibly accessory after the fact of bribery" and conceded that total penalties of 53 years could be imposed. In the hearing before the Bar Association committee (iv, above), Hirsch contended that he had been mistaken when he characterized his conduct as bribery, but maintained instead that he was an innocent victim of extortion. In his deposition in *Hirsch v. Green* (iii, above), there had been a clear admission by Hirsch that he was guilty of bribery and that he knew it at the time:

"Q So as I understand it you admit that you bribed the State's Attorney of Baltimore County for your job?

"A I will admit that he solicited a bribe from me that I paid."

The second episode in which the panel found Hirsch to have been engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102(A)(4), and illegal conduct involving moral turpitude prohibited by DR 1-102(A)(3), resulted from an effort by Kneass Harrington to have expunged from the police records a charge of violation of the gambling laws, which had been nolle prossed.

In July, 1972, Harrington had approached Louis W. Irvin, an investigator for the office of the Baltimore County's State's Attorney about this. Irvin talked to Hirsch, who in turn prepared a petition to expunge Harrington's record. Because Hirsch said he regarded his signing the petition as involving a clear conflict of interest, at Green's suggestion, he asked another member of the bar, Stephen L. Miles, to sign it. Miles did so, the order was routinely signed by a judge, and the record was ultimately expunged from the Baltimore County police department records.

In January, 1973,[2] after an investigation of the State's Attorney's office by the Attorney General had commenced, Hirsch said he learned for the first time that Irvin had received $750.00 from Harrington.[3] Hirsch, at Green's suggestion, attempted to persuade Miles to open a false file, which would presumably reflect the payment of a fee, which Miles refused to do.[4] The three-judge panel found no fault in Hirsch's conduct in the matter up to January, 1973, but

---

2. On 13 November 1972, the Governor of Maryland had instructed the Attorney General to conduct an investigation into the allegations of corruption of public officials which circulated after the escape of a prisoner from the Baltimore County jail.

3. *See* Irvin v. State, 23 Md. App. 457, 328 A. 2d 329 (1974), *cert. granted* 5 March 1975.

4. Green had agreed to reimburse Miles for the income tax consequences of such an arrangement.

concluded that Hirsch's participation in the attempted cover-up was conduct involving "dishonesty, fraud, deceit or misrepresentation" (DR 1-102(A)(4)) and "illegal conduct involving moral turpitude" (DR 1-102(A)(3)).

The panel determined that the charges brought against Hirsch as regards the payment to Green and as to his participation in the Harrington expungement after 12 January 1973 were supported by clear and convincing evidence, and concluded that Hirsch's conduct as regards Green and the Harrington expungement violated DR 1-102(A)(3), (4) and (5) and adversely reflected on his fitness to practice law (DR 1-102(A)(6)). It unanimously recommended that Hirsch be disbarred.[5]

Hirsch filed a motion ne recipiatur in this Court and alternatively moved to strike the report and recommendation of the panel. His argument in support of the motion was that the report was dated 3 December 1974, a day after Judge Ridgely P. Melvin, Jr., qualified as a judge of the Court of Special Appeals, and was no longer a judge of the Circuit Court for Anne Arundel County. We denied the motion, for the reason that Judge Melvin had been specially assigned to the Circuit Court for Anne Arundel County for the period 2-16 December 1974, and more particularly for the reason that Judge Melvin's designation as a member of the three-judge panel had been made in pursuance of Rule BV3 b and was not conditioned upon his being a judge of the Circuit Court for Anne Arundel County, the reference in our order to the Fifth Judicial Circuit having been made for purposes of identification only.

Hirsch then came before us pro se on his exceptions to the opinion and recommendations of the panel.

Hirsch's first contention in support of his exception is that the panel was illegally constituted. This was disposed of in the order dismissing his motion ne recipiatur or alternatively to strike, which has just been discussed.

Next, he argues that he was denied due process of law when the opinion and recommendations of the panel were

---

5. The panel recommended the dismissal of the false pretenses charges.

not filed within two months of the date of the hearing, presumably relying on Maryland Constitution Art. IV, § 23 and Rule 18 a,[6] which is a codification of that section. We have long held these provisions to be directory and not mandatory, *Davidson v. Katz*, 254 Md. 69, 78-79, 255 A. 2d 49, 54 (1969); *Pressley v. Warden*, 242 Md. 405, 406-07, 219 A. 2d 25, 26 (1966) and *see Maryland State Bar Ass'n v. Frank*, 272 Md. 528, 533-34, 325 A. 2d 718, 721 (1974). The Bar Association's petition was filed on 7 June 1974. The case came on for hearing on 26 July, when a motion to dismiss was taken under consideration, and disposed of by order filed 6 August. Hearing on the merits was held on 19 August, and the opinion and recommendations were filed on 3 December. In accord with our decisions, we do not regard this delay as one of constitutional dimensions.

Hirsch next finds a denial of equal protection in the notion that other members of the State's Attorney's staff, who were required to make political contributions, have not been the subject of disciplinary proceedings. The short answer to this contention is that there is simply no evidence in the record before us to support this, nor is there evidence that proceedings are not contemplated, or that other individuals, who may have been proceeded against, were exonerated.

Next, Hirsch, grounding his argument on *In re Ruffalo*, 390 U. S. 544 (1968), alleges that the three-judge panel erred when it applied the test of clear and convincing proof to the evidence before it, the test set forth in *Maryland State Bar Ass'n v. Frank, supra*, 272 Md. at 538-39 and *Bar Ass'n of Baltimore City v. Marshall*, 269 Md. 510, 516, 307 A. 2d 677, 680-81 (1973), when it should have found that the charges must be proved beyond a reasonable doubt. We remain of the opinion that the standard of proof applied in these Maryland cases is the correct measure, since *Ruffalo* did no more than extend to the challenged attorney the rights of procedural due process, including fair notice of the charges against him. Assuming, without deciding, that a higher standard of proof should have been invoked, we note from

6. Prior to 1 July 1973, this Rule was Maryland Rule 18 b.

our independent review of the record, *see Maryland State Bar Ass'n v. Frank, supra,* 272 Md. at 538-39, that the charges against Hirsch, proved by his own sworn testimony, were proved beyond a reasonable doubt. At his appearance before us, Hirsch freely admitted that the factual findings of the panel were correct, but challenged the legal conclusions of the panel.

Hirsch finds a denial of due process in the failure to warn him that his testimony before the Bar Association's Committee on Grievances could be used against him. There are three answers to this. First, the charges against Hirsch were bottomed on Hirsch's own testimony in three prior cases, which was introduced at the hearing. Second, he testified voluntarily, having been warned of his right to remain silent. For the most part this testimony was adduced by interrogation by his own counsel. Finally, and more importantly, a careful examination of the transcript of the Grievance Committee hearing shows that Hirsch's testimony was entirely self-serving as was the testimony of the only other witnesses, both of whom Hirsch produced to testify in his own behalf. His reliance on *In re Ruffalo, supra,* 390 U. S. 544 in the context of the facts of this case is completely inapposite.

The panel dismissed charges that Hirsch had been guilty of false pretenses when he drew checks purportedly for Green's campaign expenses, cashed them, and delivered the cash to Green and when he described the influence which he could exert on a Baltimore County judge in a conversation with Robert Frank, another lawyer. Hirsch finds in this a denial of due process because these charges had not been made known to him at the Grievance Committee level as required by Rule BV2 b 1. Even assuming that the contention is a valid one, the issue has been mooted by the panel's dismissal of the charges.

According to Hirsch, he was denied equal protection and due process when the panel went outside the record and referred to *Irvin v. State,* 23 Md. App. 457, 328 A. 2d 329 (1974), *cert. granted,* 5 March 1975. An examination of the

panel's opinion and the opinion in that case shows that the panel's reference was *passim* only, and that the panel confined itself to the record before it, finding facts which differed from those found in *Irvin v. State*.

In what seems a complete non sequitur to us, Hirsch seeks now, as he did at the Grievance Committee hearing, to maintain that the payment to Green, which he conceded to be bribery in his sworn testimony, was in fact nothing but extortion, of which he was the innocent victim. While many pages of Hirsch's exceptions are devoted to this ingeniously convoluted argument, it was Hirsch who admitted under oath that he was guilty of bribery, and to accept this contention would be tantamount to accepting the argument that a lawyer who files a plea of nolo contendere to a charge of fraud can go behind the plea in a disciplinary proceeding and argue that his offense was not fraud, but an inadvertent mistake. We rejected such a contention in *Bar Ass'n of Baltimore City v. Snyder*, 273 Md. 534, 331 A. 2d 47 (1975) and we reject it here.

Finally, Hirsch argues that there are mitigating or extenuating circumstances which would justify the imposition of something less than the drastic sanction of disbarment. Hirsch conceives that his going to the Maryland State Police may well have been the linchpin which assured the Green and Irvin convictions. While that much may be true, the simple fact is that he waited for nearly eight months after the Green episode and for about seven months after the Irvin episode before he went to the State Police. His change of heart came on 6 February 1973, three months after the Governor had ordered the investigation of the State's Attorney's office and at the conclusion of the trial of Robert Frank, whom Hirsch had charged with attempting to bribe *him*.[7] Hirsch's going to the State Police may well have been the result of physical and nervous exhaustion, as he maintains; by a desire to transfer the blame to others, as the panel intimated, or by a belated effort to exchange

---

7. Frank was found not guilty under a criminal indictment in the Circuit Court for Kent County, but was subsequently disbarred, *see* Maryland State Bar Ass'n v. Frank, 272 Md. 528, 535, 325 A. 2d 718, 722 (1974).

information for immunity as the investigative net began to tighten.[8]

We have repeatedly held that conduct involving moral turpitude will result in disbarment in the absence of compelling circumstances justifying a lesser sanction, *Bar Ass'n of Baltimore City v. Snyder, supra,* 273 Md. 534; *Maryland State Bar Ass'n v. Agnew,* 271 Md. 543, 318 A. 2d 811 (1974). There were no such circumstances here. Nor does the fact that the conduct did not result in a criminal conviction mandate a different result, *Maryland State Bar Ass'n v. Frank, supra,* 272 Md. at 535-36.

We perceive no reason here to warrant a departure from the recommendation of the panel that the name of Stuart Edward Hirsch be stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*

8. It should be noted, however, that Hirsch signed waivers of immunity in the Green and Irvin cases.