684 A.2d 17

**Henry A. YOUNG**

v.

**BOARD OF PHYSICIAN QUALITY ASSURANCE.**

**No. 1838, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Oct. 31, 1996.

John A. Austin and William C.C. Barnes (Hill, Foley, Stone & Miles, on the brief), Towson, for appellant.

Cynthia G. Peltzman, Staff Attorney (J. Joseph Curran, Jr., Attorney General and C. Frederick Ryland, Assistant Attorney General, on the brief), Baltimore, for appellee.

Argued before WENNER and CATHELL, JJ., and PAUL E. ALPERT, Judge (Retired), Specially Assigned.

WENNER, Judge.

Henry A. Young (Young) appeals from a judgment of the Circuit Court for Baltimore County affirming the decision of the Board of Physician Quality Assurance (the Board)[1] to revoke Young's license to practice medicine in Maryland. On appeal, Young has presented us with three questions, which we have rephrased slightly for clarity:

(1) whether the Board's decision to suspend Young's license was based on a peer review process which violated mandatory agency regulations;

(2) whether the trial court erred by refusing to review the entire record when determining whether the Board had sustained its burden of proof; and

(3) whether the decision of the Board established that Young failed to practice within the standard of care.

We shall respond in the affirmative to Young's first question, and reverse the judgment of the circuit court.

## FACTS

Young is a neurosurgeon who has been licensed to practice medicine in Maryland since 1986. In November of 1990, the Board received a complaint from one of Young's patients. The patient complained of Young having evaluated her without an appropriate neurological examination. In response to the patient's complaint, the Board selected for review twenty of Young's surgeries at Franklin Square Hospital.[2]

On 17 July 1992, the Board referred the Young complaint to the Medical & Chirurgical Faculty of Maryland (Med–Chi), which referred it to the Maryland Neurological Society Peer

---

1. The Board is the state regulatory agency charged with licensing and disciplining Maryland physicians. Maryland Medical Practice Act, Title 14 of the Md.Code Ann., H.O.

2. The Medical and Chirurgical Faculty of Maryland defines a practice review as "a form of peer review that evaluates a physician's overall performance to determine whether he/she is delivering an appropriate standard of medical care."

Review Committee (the Committee). The Committee spent four hours at a dinner meeting discussing the selected surgeries and reviewing the patients' files and other materials amassed for evaluation.

Rather than individually reviewing each of them, one of the files was assigned to each of the members, with each member presenting a review of the patient's file assigned to that member. During the presentation, pertinent material was circulated among the other members of the Committee. After each presentation, the full Committee discussed that patient's file until coming to a consensus as to whether Young had breached the standard of medical and surgical care with respect to that patient.

Only 14 of the 20 files were reviewed at the meeting, with the Committee finding Young had breached the standard of care in nine of them. The Committee issued a report on 4 September 1992, finding Young to have breached the appropriate standard of care by performing unnecessary neurosurgery. Based on these findings, Young was charged with violating H.O. § 14–404(a)(22) in "failing to meet appropriate standards for medical and surgical care."

At a hearing before an administrative law judge (ALJ), several members of the Committee presented expert testimony, including one Dr. Thomas Ducker. Dr. Ducker's testimony was based exclusively on the Committee's findings at its dinner meeting. Young presented no expert testimony, complaining that he had not been given sufficient notice of the hearing adequately to respond to the charges. Nonetheless, the ALJ concluded that Young had failed to meet appropriate standards of care in his neurosurgical practice, and recommended that Young's license be revoked. After denying Young's exceptions, the Board issued a final order revoking Young's license to practice medicine in Maryland.

Young sought judicial review and a stay of the Board's

order. The stay was denied. H.O. § 14–408(c).[3] Young also sought remand of the Board's decision for the taking of additional evidence, which was granted. The hearing on remand was presided over by the ALJ who had presided at the first hearing. Although Young presented three expert witnesses, the ALJ again recommended that Young's license be revoked. Young again sought judicial review, and the Circuit Court for Baltimore County affirmed the Board's decision. This appeal followed.

## STANDARD OF REVIEW

██ "Judicial review of administrative agency action is narrow," *United Parcel v. People's Counsel*, 336 Md. 569, 576, 650 A.2d 226 (1994), and "[t]he court's task on review is *not* to 'substitute its judgment for the expertise of those persons who constitute the administrative agency.' " *Id., quoting Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 513, 390 A.2d 1119 (1978). The standard for reviewing actions of administrative agencies is set forth in Md.Code Ann. State Gov't § 10–222(h) (Supp. 1994), which provides:

Decision—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion or decision:

   (i) is unconstitutional;

   (ii) exceeds the statutory authority or jurisdiction of the final decision maker;

   (iii) **results from an unlawful procedure;**

   (iv) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

---

3. Section 14–408(c) provides: "Stay of decision.—An order of the Board may not be stayed pending review."

(v) is arbitrary and capricious.

(Emphasis added.)

■ Our task on review is to determine "whether there was substantial evidence before the administrative agency on the record as a whole to support its conclusions." *Maryland Comm'n. on Human Relations v. Baltimore,* 86 Md.App. 167, 173, 586 A.2d 37 *cert. denied,* 323 Md. 309, 593 A.2d 668 (1991). In making this determination, we may not substitute our judgment for that of the agency. *Maryland State Police v. Lindsey,* 318 Md. 325, 333, 568 A.2d 29 (1990). Rather, "the test is a deferential one, requiring 'restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions.' " *State Admin. Bd. of Election Laws v. Billhimer,* 314 Md. 46, 58, 548 A.2d 819 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989)(*quoting Supervisor of Assessments of Montgomery County v. Asbury Methodist Home, Inc.,* 313 Md. 614, 625, 547 A.2d 190 (1988)).

■ "When, however, the agency's decision is predicated solely on an error of law, no deference is appropriate and the reviewing court may substitute its judgment for that of the agency." *Strother v. Board of Educ.,* 96 Md.App. 99, 108, 623 A.2d 717 (1993). In ascertaining the propriety of an agency's legal conclusions, our cases have articulated a three-fold analysis:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law."

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, i.e., by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. At this juncture, ... "[i]t is the agency's province to resolve conflicting evidence, and, where inconsistent

inferences can be drawn from the same evidence, it is for the agency to draw the inference."

3. Finally the reviewing Court must examine how the agency applied the law to the facts. This of course is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]."

*Comptroller of the Treasury v. World Book Childcraft Int'l, Inc.,* 67 Md.App. 424, 508 A.2d 148, *cert. denied,* 307 Md. 260, 513 A.2d 314 (1986). As we are here presented with an issue of law, our review is expansive, *Gray v. Anne Arundel County,* 73 Md.App. 301, 307–09, 533 A.2d 1325 (1987). Under such circumstances, deference is not appropriate and we may substitute our judgment for that of the agency. *Washington Nat'l. Arena Ltd. Partnership v. Comptroller of Treasury,* 308 Md. 370, 378–79, 519 A.2d 1277 (1987).

## I.

In order to resolve Young's first question, we must endeavor to divine Med–Chi's intent in promulgating its rules of procedure. That is, we must determine whether they are mandatory, or directory only. Thus, we must begin by ascertaining the intent of the General Assembly in granting authority to Med–Chi to promulgate such rules.

We first note that "the right of the Legislature to delegate powers to administrative agencies has been recognized in this State for more than 125 years." *See Department of Natural Resources v. Linchester Sand & Gravel Corp.,* 274 Md. 211, 218, 334 A.2d 514 (1975). Title 14 of the Health Occupations Article of the Annotated Code of Maryland sets forth the disciplinary actions which may be taken against physicians, and delegates such authority to the Board. HEALTH OCC. § 14–401(c)(2)(i) requires the Board to "refer any allegation

involving standards of medical care, as determined by the Board, ... to the faculty [4] for further investigation and physician peer review" after performing its preliminary investigation. In deciding to take action against a physician, the Board is required to grant the physician an opportunity for a hearing. HEALTH OCC. § 14–405(a) requires such a hearing to be conducted as prescribed in the Administrative Procedure Act.[5] Moreover, COMAR contains the procedures to be used by Med–Chi when conducting such an investigation and physician peer review.

COMAR 10.32.02.02(20) defines physician peer review as "an evaluation **according to procedures**, set forth by the faculty and approved by the Board, by physicians within the involved medical specialty or specialties, of an act or acts of medical or surgical care, or other acts connected with medical or surgical practice, by an applicant or licensee." (Emphasis added.) According to the authority granted it, the faculty has adopted a number of procedures to be followed in conducting a peer review. These procedures have been approved by the Board. Many were followed by Young's peer review committee and are not at issue. For example, Young's peer review committee consisted of five board certified neurosurgeons, four more than required. The Committee is also required to review not less than ten files, and the Committee selected the files on twenty of Young's surgeries, fourteen of which were reviewed by the Committee.

On the other hand, the procedures not complied with are at issue in Young's appeal. For example, "[e]ach member of the review team **must** review all records.... Each member of the review team **shall** complete the Initial Record Assessment Worksheet [ (worksheet) ] on each record reviewed.... In addition, the reviewer should make sufficiently complete and

---

4. Faculty is the Medical and Chirurgical Faculty of the State of Maryland. HEALTH OCC. § 14–101(d). We shall refer to it either as Med–Chi or the faculty.

5. The Administrative Procedure Act can be found in Md.Code Ann. State Government, § 10–101 et seq. (1993 repl. vol.).

clear notes about the record to support findings that the standard of care was met or not met and to ensure the quality and completeness of the review." (Emphasis added.)

These procedures were not followed in Young's case. According to Dr. Rybock, a member of the Committee, "[w]e each took a chart, went through the chart on our own, went through the radiographs. And then after we finished that review, one by one we would present the case, summarize what we thought was important, pass the records around for everyone to look at, discuss the case, come to a unanimous conclusion, then we would do that again."

In addition, no one completed the worksheet. We presume the purpose of the worksheet was to ensure the type of independent review which was lacking in Young's case. Consequently, did the Committee's failure to comply with these procedures deprive Young of the process due him?

According to the Board, as the book contains no sanction for failure to comply with them, these procedures are directory only. As the Board sees it, since the book is an internal document, the procedures are not intended to be mandatory. Alternatively, if mandatory, they were substantially complied with. We disagree.

We begin by noting that "[i]n recent years the Court of Appeals has with increasing rigidity applied the principle of statutory construction that use of the word 'shall' is presumed mandatory." *Pope v. Secretary of Personnel,* 46 Md.App. 716, 717, 420 A.2d 1017 (1980). Moreover, we said in *Board of Education v. Barbano,* 45 Md.App. 27, 411 A.2d 124 (1980), that "[a]n agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down." *Id.* at 41, 411 A.2d 124, (*quoting U.S. v. Heffner,* 420 F.2d 809, 811 (1970)).

■ Thus, "an administrative agency is required to absolutely comply with the guidelines as well as the rules and regulations it promulgates...." *Board of Education v. Bar-*

*bano,* 45 Md.App. at 37, 411 A.2d 124. Although this rule has recognized exceptions,[6] they are of no avail to the Board.

In arguing that the absence of a sanction indicates that these procedures are directory only, the Board relies on *Maryland State Bar Ass'n v. Frank,* 272 Md. 528, 533, 325 A.2d 718 (1974), in which the Court of Appeals said that a rule containing no sanction for failing to comply with its terms, is more likely to be directory than mandatory. We point out, however, that *Frank* dealt with the failure of the Maryland State Bar Association to comply with Md.Code (1957, 1968 Repl.Vol.), Art. 10 §§ 12, 13, and (6) in "prosecuting an attorney charged with professional misconduct." Hence, we view in *Frank,* one of the limited exceptions to the presumption rule that use of the word "shall" is mandatory. *See also G & M Ross Enterprises, Inc. v. Board of License Commissioners of Howard County,* 111 Md.App. 540, 682 A.2d 1190 (1996).

More important, "one of the contextual factors relied upon, **though not controlling,** to hold the use of 'shall' directory is when a statute provides no penalty for failure to act within a prescribed time." *Pope v. Secretary of Personnel, supra.* (Emphasis added.) Although we are here mindful that failure to comply with the procedures in question provides no sanction, we nevertheless hold them to be mandatory.

█ Since following the prescribed procedure may result in a licensed professional losing that license, they "should be strictly construed against the disciplinary agency." *McDonnell v. Commission on Medical Discipline,* 301 Md. 426, 436, 483 A.2d 76 (1984). In light of the gravity of these proceedings, it is clear to us that the procedures adopted by the faculty for conducting peer reviews are mandatory, and the

---

**6.** Two exceptions have been carved out of the presumption that the use of the term "shall" is mandatory. The first is "[w]hen 'shall' is used in an unsanctioned statute directed toward an arbiter's time limitations for opining." *Pope,* 46 Md.App. at 719, 420 A.2d 1017. The second is "[w]hen the broad underlying policy of the law regulating conduct of an officer of the court is for the public protection." *Id.*

Board's failure to follow them has deprived Young of the process due him.

The Board next contends that, as the book is an internal document, the procedures contained in it were simply adopted to "bring cohesiveness and fairness to the review process throughout the state, as well as to provide a basis on which the Board ... can develop regulations for peer review." While this may be true, the Board fails to recognize that the book begins with an introductory statement by the faculty's president that it contains "its required administrative procedure for investigation in the State of Maryland." The book was promulgated in response to COMAR 10.32.02.03B(1)'s requirement that the faculty conduct "an evaluation **according to procedures,** set forth by the faculty and approved by the Board, by physicians within the involved medical specialty. . . ."

The book also provides that the faculty

**shall** review the reports received from the investigating committees to determine the adequacy of the review and the report. It shall assure that:

a.   the review and report were conducted and prepared in accordance with the guidelines in this handbook;

b.   the conclusions are supported by the evidence;

c.   the review included a physician reviewer who practices within the involved medical specialty and the report to [Med–Chi] includes her/his comments.

(Emphasis added.)

This requirement was obviously to provide an internal check to ensure that the committee had followed the procedures deemed of vital importance to the physicians who promulgated and adopted the book. If they were intended to be directory only, there would be no need whatever for the internal policing mechanism. Because these procedures afford an accused procedural rights required to be followed by the committee when conducting a physician's review, we hold them to be mandatory.

## III.

██ The Board alternatively contends that, even if the questioned procedures are mandatory, they were substantially complied with. Specifically, the Board contends that, having reviewed more than the required number of cases and having provided more than the required number of physicians within Young's medical specialty, Young was afforded the process due him. We do not agree with the Board's contention that its findings were based on an individual review of Young's records.

We remind the Board that the purpose of the procedures is to afford an accused physician procedural safeguards. In other words, the peer review was required to be based on an individual assessment of Young's surgeries, protecting him from the rush to judgment which so often occurs in reaching group decisions. That is, to prevent precisely the type review which occurred here. In fact, as we have noted, the files were neither individually reviewed, nor was an individual assessment sheet completed. Consequently, the Committee's findings should not have been accepted.

Indeed, Dr. Ducker conceded at the hearing that, after reviewing the MRI films contained in one of the files, he found Young's surgical decision to be well within the standard of care. Although Dr. Ducker had supposedly individually reviewed each of the files of Young's surgeries at the committee meeting, it is obvious that he had not individually reviewed this one. Under such circumstances, we shall reverse the judgment of the circuit court.

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**