WILLIAM A. KRAIBUEHLER, Jr., ET AL., PROSECUTORS, v. CIVIL SERVICE COMMISSION, CITY OF NEWARK, ETC., ET AL., RESPONDENTS.

Argued January 15, 1946—Decided March 7, 1946.

Before Justices CASE, BODINE and PERSKIE.

For the prosecutors, *Eisenberg & Spicer* (*Jerome C. Eisenberg*).

For Civil Service Commission, *Walter D. Van Riper,* Attorney-General, and *William K. Miller,* Assistant Deputy Attorney-General.

For City of Newark and John A. Brady, Director, *Thomas M. Kane* and *Thomas L. Parsonnet.*

The opinion of the court was delivered by

CASE, J. Prosecutors were employed in varying capacities in the Emergency Relief Division, known also as the Division of Public Welfare, within the Department of Public Affairs of the City of Newark. It is conceded that the work in that division had diminished to the point where a decrease in the number of workers was justified for reasons of economy and that the city had the right to lay off its employees for reasons of economy.

On October 26th, 1943, the director of the Department of Public Affairs gave notice that a retrenchment in the expenses of the division was imperative and that prosecutors, being the employees with the least seniority rights, would, for reasons of economy, be placed on leave of absence. The effective date of the layoffs was November 15th, 1943. On November 30th, 1943, prosecutors filed their petition with the Civil Service Commission which soon thereafter, and without waiting for the hearings, determined that four of the prosecutors, Kraibuehler, Taylor, Andersen and Cauco, who had held the rank of junior supervisors, were entitled, instead of being laid off, to be demoted to the position of family visitors—a lower rank—and that such demotions should be made as of November 15th, 1943. Later there was a full decision. The writ brings up the commission's disposition of the matter.

One of the questions which prosecutors now seek to raise is that the Civil Service Commission erred in not directing that the salaries of those prosecutors, as family visitors, be paid from November 15th, 1943, to January 3d, 1944. We do not discover that the question of that salary was made an issue before the commission. The hearings before the commission were in February, March and April, 1944. Nothing in the record thereof pertinent to such an issue is brought to our attention. The order was definite in making the later employment begin when the earlier ended, that is to say, on November 15th, and presumably the salary scale was not in doubt. This is not properly an action for the recovery of salary.

Prosecutors contend that their layoffs were illegal because not made on a city wide basis. The argument is that before

any of the prosecutors could be laid off or reduced in rank in the process of adjusting the Division of Emergency Relief to a reduced personnel a survey had to be made of all other positions in the city service to the end that if any position which one of the prosecutors was qualified to fill was occupied by an employee junior in point of service the latter should be displaced to make room for the prosecutor. Such a contention, if sound, would mean that the displaced employee would be entitled to a like city wide search in his interest and so on down the line. It is inevitable that much confusion, turmoil and dispute would be incident to such a practice in a large city with several departments under wholly distinct management, with many hundreds of employees in numerous classes of employment and with varying resemblances or differences in the characteristics of the work. The city and the Civil Service Commission contend that such a practice is not feasible and is not within the purview of the statute; and we agree.

It is settled that positions within the civil service may be abolished and that employees under civil service may be separated from their positions for reasons of economy. *Santucci* v. *Paterson,* 113 *N. J. L.* 192; *Byrnes* v. *Boulevard Commissioners of Hudson County,* 121 *Id.* 497; *Gianettino* v. *Civil Service Commission,* 120 *Id.* 531.

Statutory provisions pertinent to civil service employees separated from the service without delinquency or misconduct on their part are *R. S.* 11:22–9 and *R. S.* 11:22–10. *R. S.* 11:22–9 provides:

"When any person holding an office or position under the classified service has been separated from the service because of reasons of economy or otherwise, * * *, his name shall be placed upon a special eligible list, which list shall take precedence over all other civil service lists, and shall be entitled to reinstatement at any time thereafter in the same or any similar office or position of the same kind as that from which he was previously separated as soon as such an opportunity arises. * * *."

*R. S.* 11:22–10 provides:

"A person in the classified service whose position has been abolished for reasons of economy or otherwise  *  *  *  shall, with the approval of the commission, be demoted to some lesser office or position in the same department in the regular order of demotion and placed therein with the salary or pay attached.  *  *  *."

Under the first provision a person separated from the service has the right to have his name placed upon an eligible list for reinstatement when an opportunity arises; but there is no provision for displacing another employee. Under the second provision a person whose position has been abolished has, with the approval of the commission, the right to be demoted to some lesser office or position *in the same department*. The two statutory enactments were not passed at one time. The first was enacted as section 23 of chapter 156, *Pamph. L.* 1908, *Comp. Stat., p.* 3803, § 79, amended by chapter 128, *Pamph. L.* 1933 and chapter 11, *Pamph. L.* 1935. The second was enacted as section 1 of chapter 122, *Pamph. L.* 1916, 1924 *Supp.,* § 144-98. The two overlap in their application and may, we think, be read together to the extent of deducing a legislative intent that where the right of demotion exists it is restricted to a demotion within the department within which the person has been employed. Aside from that the right of one who has been separated from the service or whose position has been abolished, for reasons of economy or other reason not grounded in his delinquency or misconduct, is to have his name placed upon a special eligible list with reinstatement at an appropriate time thereafter. Prosecutors have not been deprived of any right thus accorded them.

It is also said that the retention of employees in temporary positions and the setting up of a new division known as the Soldiers and Sailors Municipal Aid Bureau constitute evasions of the tenure protection afforded by the Civil Service Laws. There is nothing in that statement which, *ipso facto,* shows evasion. Accusation is not proof. It is not shown that any employees were retained in temporary positions to which the prosecutors had the right to be assigned. Overlapping in the retention of temporary employees beyond the

lay-off of permanent employees through a period of several weeks is charged in two instances, but the proof adduced is not sufficiently cogent to persuade us that the charge is true or that substantial injustice was done the prosecutors. The burden of proof is upon prosecutors to show facts which constitute an alleged evasion. The Civil Service Commission asserts that in its disposition of the case it took into consideration the qualifications of the employees, the appropriateness of the re-employment list and all other matters that the law and the rules prescribe; and while that comes to us in the form of an assertion it goes to matters which, failing proof *contra,* are to be presumed. It is not to be presumed that the commission did not do its duty.

It is further charged that the Civil Service Commission did not follow its own rules in that the approval of the layoff of the prosecutors followed rather than preceded the event. The substantial fact is that the commission did, after full and extended hearings, approve the layoffs as of the time they were made; and nothing has been presented before us which calls for an invalidation of that approval.

Finally, it is said that the commission erred in determining that the employment of persons in "out of title" positions did not affect the rights of prosecutors. *R. S.* 11 :22–12 provides that:

"No person shall be appointed or employed under any title not appropriate to the duties to be performed nor assigned to perform the duties other than those properly pertaining to the position which he legally holds."

Proof was taken which tended to show that certain employees in the Department of Public Affairs were working out of title, that is to say, that they were performing duties not embraced within the titles of their positions. The commission so found, condemned the practice and directed a discontinuance. The commission also determined that such wrongful employment did not affect the validity of the demotions and layoff of the prosecutors; and this is the only phase of the matter with which we are now concerned. Prosecutors, to make their point, emphasize this incident: One Smith on May 16th, 1939, was appointed senior supervisor in the Divi-

sion of Emergency Relief at a salary of $2,800 a year. In November, 1943, he was assigned to the position of junior supervisor in the same division, thus displacing prosecutor Kraibuehler who, on the same May 16th, 1939, had been appointed junior supervisor at a salary of $1,660. Now this Kraibuehler was one of those who, removed as junior supervisors on November 15th, 1943, were, by order of the commission, *supra*, restored to employment with demotion to the position of family visitor, at the salary of $1,560. The situation, therefore, was that a senior supervisor, without work under that title, was assigned to the position of junior supervisor and a junior supervisor was accordingly demoted to the position of family visitor; and presumably the person theretofore employed as family visitor was one of those laid off for reasons of economy. So far as the record discloses Smith retained his former title and salary. If so, that was a wrong which should be corrected, and it was within the commission's decision that "such assignments are wrong and their continuance will not be countenanced." But that is not the present issue. Assuming that to be done which apparently should have been done, Smith would have been demoted in terms to the title of junior supervisor. But that still would have left Kraibuehler subject to the demotion that was actually visited upon him. Clearly, the finding was not erroneous as to him, and we are of the opinion that it was not so as to the others.

Inasmuch as the work in the Emergency Relief Division had diminished and a decrease in the number of workers was justified, it was inevitable that there should be some shifting of positions and some layoffs. Prosecutors were affected by that process, but not adversely to any of their rights in the respects of which they complain. The holders of civil service positions may be laid off in the interest of economy and their duties assigned to others. It is a question of the *bona fides* of the action. *Gianettino* v. *Civil Service Commission*, 120 N. J. L. 531. No bad faith has been shown. We conclude that the writ of *certiorari* should be dismissed, with costs.