# THE BAR ASSOCIATION OF BALTIMORE CITY
## v. SNYDER

[Misc. Docket (Subtitle BV) No. 3, September Term, 1974.]

*Decided February 3, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Francis J. Gorman* for The Bar Association of Baltimore City.

*Martin B. Greenfeld* for Alvin I. Snyder.

SINGLEY, J., delivered the opinion of the Court.

In October, 1971, Alvin I. Snyder, former president and chairman of the board of Uptown Federal Savings and Loan Association (Uptown) and a member of the Maryland bar since 1950, was indicted under a four count indictment, returned by the grand jury to the United States District Court for the District of Maryland. He entered pleas of nolo contendere to counts two and four, which had charged him respectively with violation of 18 U.S.C. §§ 1006 (1961) and 2 (1951) (receiving money from a federal savings and loan association with intent to defraud; aiding and abetting) and

of 18 U.S.C. §§ 1001 (1948) and 2 (1951) (making a false statement of material fact in a statement to a government agency, the Federal Home Loan Bank Board; aiding and abetting). Synder was fined $10,000.00.

On 30 May 1974, The Bar Association of Baltimore City filed in this Court a petition charging Snyder with professional misconduct and seeking disciplinary action. We referred the petition, pursuant to Maryland Rule BV3 b, to a panel of three judges of the Eighth Judicial Circuit, Judges Charles D. Harris, J. Harold Grady and David Ross, for hearing and recommendation.

The matter came on for hearing on a stipulation of facts, supplemented by Snyder's testimony, which can be briefly summarized. Our usury law, Maryland Code (1957, 1972 Repl. Vol.) Art. 49, §§ 1-11 was substantially revised by Chapter 453 of the Laws of 1968, effective 1 July 1968. Particularly significant is the definition of interest contained in § 1 and the establishment of a maximum interest rate of 8% by § 3.[1] After our decision in *B. F. Saul Co. v. West End Park*, 250 Md. 707, 727-28, 246 A. 2d 591, 603-04 (1968), holding that fees and charges retained by the lender must be included in the computation of the rate of interest, it was no longer possible for Uptown Federal to retain charges made for credit reports and appraisals in cases where a borrower was being charged 8% interest.

Snyder, as president and chairman of the board of Uptown; Joseph Sussman and David Janofsky, vice presidents of Uptown, and Martin Gilbert, Uptown's secretary, arranged to route fees charged for appraisals and credit reports required for certain loans to Perry Klein Associates, Inc. (Klein), a real estate company.[2] Borrowers were charged sums ranging from $60.00 to $85.00 for appraisals and credit reports, and made their checks payable to Klein. Klein would then order a credit report at an average cost of $7.50 and arrange for an appraisal at an average cost

---

**1.** Effective 1 June 1974, the maximum rate of interest on loans secured by mortgages on residential properties was increased to 10%. Maryland Code (1957, 1972 Repl. Vol., 1974 Cum. Supp.) Art. 49, § 13 (a).

**2.** Snyder testified that it was his understanding that this mechanism was to be used only for 8% loans. In practice, it was not so limited.

of $40.00. It retained a fee of $2.00, later increased to $3.00 for each application, and accumulated the balance which was to be divided as follows: Snyder, 75%; Sussman, 15%; Janofsky and Gilbert, 5% each. In December, 1968, $7,500.00 was divided in this fashion and an additional amount of $9,478.00 was disbursed in December, 1969. Snyder's share was paid by Klein, at Snyder's direction, to Snyder's brother. The receipt of these payments was not disclosed to the other directors, nor was there a disclosure on the officer's questionnaire Snyder was required to submit annually in connection with Federal Home Loan Bank Board examinations.

After an evidentiary hearing at which Snyder was the only witness, it was the unanimous recommendation of the three-judge panel that Snyder be disbarred.

The case came before us on Snyder's exceptions to the panel's memorandum and recommendation, principally grounded on the idea that the panel failed to take into account what Snyder regards as exculpatory evidence. Snyder takes his cue from a statement in our opinion in *Maryland State Bar Ass'n v. Agnew*, 271 Md. 543, 553, 318 A. 2d 811, 817 (1974) which was referred to in *Maryland State Bar Ass'n v. Callanan*, 271 Md. 554, 556, 318 A. 2d 809, 810 (1974):

> "[T]his Court has consistently adhered to the the view . . . that when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like con-duct, absent the most compelling extenuating cir-cumstances . . . disbarment followed as a matter of course."

Snyder concedes that the offense with which he was charged was a crime involving moral turpitude. As a consequence of his nolo contendere plea, a final judgment of guilty was entered, *Maryland State Bar Ass'n v. Agnew, supra*, 271 Md. at 547-48; Rule BV4 f 1.

What Snyder conceives to be evidence of extenuating circumstances is his notion that the scheme was de-vised in order to bring Uptown's practices into conformity

with the new usury law; his contention that he derived no personal gain from the arrangement, and his idea that his conduct was the consequence of inadvertence rather than of criminal intent. The short answer to this is that the result of the scheme was either to defraud Uptown of income to which it would otherwise have been entitled on loans having an interest rate of less than 8%, or alternatively to saddle obligors of 8% loans with charges which they should not have been required to pay. The fact that Snyder's share of the surplus was paid to his brother does not negate the concept of personal gain. The Internal Revenue Service regarded this as income constructively received by him and taxed it accordingly. Additionally, the payment relieved him of what might have been at least a moral obligation to assist in the support of an invalid brother.

An examination of the colloquy which took place at the evidentiary hearing makes it clear that the first two contentions were before the panel, but that the panel rejected the argument that they were in any way extenuating. It was only the final contention regarding lack of criminal intent which the panel quite properly found to have been foreclosed by the plea of nolo contendere.

There being a total absence of extenuating circumstances here, we accept the panel's recommendation that the name of Alvin I. Snyder be stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*