(No. 48345.—▮▮▮▮▮▮▮▮▮▮▮▮▮)

*In re* BERNARD JAMES O'HALLAREN, Attorney, Respondent.

*Opinion filed October 1, 1976.*

Daniel Andrew Gallagher, of Chicago, for respondent.

Mary M. Conrad, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

On October 31, 1973, a six-count indictment was returned by a Federal grand jury against Bernard J. O'Hallaren, respondent herein, in the United States District Court for the Northern District of Illinois, Eastern Division. The first count charged respondent "knowingly and wilfully attempted to evade and defeat the unpaid portion of income tax which was due and owing by him to the United States of America for the calendar year of

1968" by failing to make any return, failing to pay the balance of the tax and by making false statements to Internal Revenue agents in violation of section 7201, title 26, of the United States Code (26 U.S.C.A. sec. 7201). Counts three and five contained similar allegations regarding the years 1969 and 1970. Count two charged respondent "knowingly and wilfully failed to make an income tax return" for 1968 in violation of section 7203, title 26, of the United States Code (26 U.S.C.A. sec. 7203). Counts four and six contained similar allegations regarding 1969 and 1970. On October 29, 1974, respondent pleaded guilty to counts two, four and six, and the remaining counts were dismissed on the government's motion. Respondent was placed on probation for concurrent terms of two years and fined $1000 on each count with the fines to be paid within 90 days.

On March 12, 1975, the administrator of the Attorney Registration and Disciplinary Commission of Illinois filed a complaint alleging respondent's conduct tended to defeat the administration of justice and to bring the courts and the legal profession into disrepute, and praying that the Hearing Board recommend such disciplinary action as it believed warranted. Following continuances to permit respondent to secure from the Internal Revenue Service copies of documents previously filed by him, a hearing was held on July 29, at which counsel for the administrator introduced certified copies of the indictment and judgment order and then rested. Respondent moved for a "directed verdict" on the ground that no proof of any conduct involving moral turpitude had been presented. That motion was denied and respondent then testified in his own behalf and called five character witnesses, including a State senator, a former State representative and an attorney in the city of Chicago law department who had formerly supervised respondent's work in the building enforcement division. Additionally, it was stipulated that three other legislators and two sitting judges, if called as

witnesses, would testify favorably as to respondent's character and reputation and that the legislators would also testify favorably as to his work in the General Assembly. On November 3 the Hearing Panel filed its report finding respondent's misconduct involved moral turpitude, was unbecoming a member of the legal profession, tended to defeat the administration of justice and bring the legal profession into disrepute and recommending respondent's suspension from practice for 18 months. Exceptions thereto were filed by respondent with the Review Board, which affirmed the recommendation, adding, however, that it continue for the 18-month period and until further order of the court.

Respondent was married in 1953 and has one child whose age is not disclosed by the record. Respondent graduated from DePaul University School of Law in 1959 and was admitted to the bar of Illinois in 1966. Shortly thereafter he was employed in the office of the corporation counsel for the city of Chicago where his duties apparently consisted primarily of prosecuting building and housing ordinance violations. In 1968 he was elected a representative in the General Assembly and was reelected in 1970. Due, he testified, to a combination of marital difficulties commencing in 1967, and unfavorable publicity resulting from the investigation of his failure to file income tax returns, he did not seek reelection in 1972. He and his wife were divorced in 1973.

It appears undisputed that on April 14, 1969, respondent and his wife filed a request for an extension of time until June 14 within which to file their 1968 income tax return. The record also contains a letter, dated March 9, 1970, from the midwest region Internal Revenue Service Center indicating respondent and his wife had filed what is there characterized as an "incomplete delinquent return" for 1968, postmarked June 16, 1969. The letter requested filing within 15 days of a complete return with supporting

statements and schedules. Apparently no further action was then taken.

Respondent testified that he requested extensions for filing returns for 1969 and 1970, and a copy of an extension application for 1970, dated April 14, 1971, and signed by respondent and his wife appears in the record with a notation by an Internal Revenue Service supervisor that it was denied. On that application respondent indicated that he had filed income tax returns on time for each of the three preceding years.

Respondent testified that his wife, who was employed by the Chicago Board of Education as a librarian-teacher, refused during these years to sign joint income tax returns or to cooperate in their preparation. In January, 1972, returns for 1968, 1969 and 1970 were prepared with the assistance of a named "income tax man" and filed by respondent. Though the returns indicated respondent was married and filing jointly with his wife, they were signed only by respondent. For each year respondent indicated receipt of $2000 in legal fees in addition to his salaries from the city and State. Respondent testified that the balance of tax, approximating $7300 over that withheld, was paid. He further testified that an audit revealed some $2850 still due and that amount, together with penalties aggregating about $7750, would be due as soon as the formal statement thereof was received.

During the years in question, respondent testified, their son commenced having difficulty in school and it was suggested that a psychologist be consulted. As a result, respondent stated, he and his wife also consulted with the psychologist some six to ten times regarding their marital problems.

Respondent's principal argument in this court is that a conviction for wilfully failing to file an income tax return does not, *per se,* establish moral turpitude; that whether moral turpitude exists in such cases must be determined by

the facts of each case; and that the facts of this case demonstrate its absence.

As we have stated, however, in *In re Andros,* 64 Ill. 2d 419, 422-23, "It is not necessary that the crime of which a defendant is convicted involve moral turpitude before discipline can be imposed. \*\*\* The attorney is being disciplined not because of his conviction but because of the conduct." While Mr. Justice Schaefer and I would adhere to our earlier opinions indicating a wilful failure to file income tax returns is an offense involving moral turpitude (*In re Beil* (1975), 61 Ill. 2d 378; *In re Bass* (1971), 49 Ill. 2d 269; *In re Lambert* (1970), 47 Ill. 2d 223), a majority of the court believes that conclusion does not necessarily follow from a conviction of that offense. Those cases, consequently, are no longer authority for that proposition. Proof of respondent's conviction, while not necessarily establishing moral turpitude, conclusively established misconduct constituting grounds for discipline in the absence of mitigating circumstances of an extraordinary nature. Consequently, proof of that conviction in this case established a *prima facie* case, and respondent's motion for a finding in his favor at the close of the administrator's evidence was properly denied.

Respondent also complains at length in his reply brief of the references in the administrator's brief to respondent's representation, in his application for an extension of the time within which to file the 1970 tax return, that returns for the preceding three years had been timely filed. Respondent argues that he has been denied due process since he was not initially charged with "lying" to the Internal Revenue Service, and also argues that the answer to the form question was not necessarily false. While we do not, in the context of this case, attach to that answer the importance which the administrator appears to, reference thereto does not involve any due process deprivation. It was respondent who offered the application in evidence as a part of his defense. Once admitted, he cannot complain

that the administrator calls attention to the fact that one of the questions on that form had been answered falsely.

Respondent also urges that the recommended suspension is unduly harsh in view of the circumstances that he made no effort to conceal the fact that taxes were due, sought extensions of time in which to file, and that a large part of the taxes owed had been withheld from his salaries. He cites decisions in other States dismissing disciplinary charges, predicated solely upon failure to file income tax returns, and suggests similar action here. Our action, however, is governed by the rather substantial number of our own opinions on this subject. Determination of the discipline to be imposed requires an independent evaluation of the circumstances in each case. Because those circumstances vary substantially, sanctions which are appropriate in one situation may be inappropriate in another even though the underlying offense is similar or even the same. A number of disciplinary proceedings before this court have involved failure to file Federal income tax returns for differing numbers of years and with differing mitigating factors. Among them are *Lambert,* where a failure to file for 17 years resulted in five years suspension, *In re Gorman* (1970), 46 Ill. 2d 26, where a five-year failure resulted in suspension for one year and until the further order of the court, and *Schub*, in which an omission to file for three years coupled with failure to comply with a subpoena resulted in six months suspension. In the more recent case of *In re Washington* (1975), 62 Ill. 2d 23, we indicated a two-year suspension would normally be deemed reasonable where the failure to file had continued for four years.

We do not find particularly persuasive the reasons advanced by respondent as mitigating his failure to file tax returns. While he urges that lack of cooperation by his wife made preparation of the returns difficult, he could have resolved the problem at a much earlier date exactly as he ultimately did after the Internal Revenue Service com-

menced its investigation. An attorney's failure to file returns and his subsequent conviction of that offense diminish public confidence in the legal profession and tend to bring it into disrepute. Our consideration of all of the circumstances of this case compels the conclusion that the recommended suspension of 18 months is appropriate. We do not, however, find sufficient indication of emotional instability to justify the Review Board's additional recommendation that suspension continue until the further order of the court. See *In re Gorman.*

*Respondent suspended.*