## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* JOSEPH WALMAN

[Misc. Docket (Subtitle BV) No. 17, September Term, 1975.]

*Decided June 9, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*William H. Zinman* for respondent.

*L. Hollingsworth Pittman, Bar Counsel,* for petitioner.

LEVINE, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH and DIGGES, JJ., dissent. MURPHY, C. J., filed a dissenting opinion in which SMITH and DIGGES, JJ., concur at page 466 *infra.* SMITH, J., filed a dissenting opinion in which MURPHY, C. J., and DIGGES, J., concur at page 470 *infra.*

In 1973, Joseph Walman, a member of the Maryland Bar since 1964, was indicted by a grand jury in the United States District Court for the District of Maryland with "wilfully and knowingly" failing to file his federal income tax return for the years 1967, 1968, and 1969. On October 31, 1973, respondent appeared before United States District Judge Alexander Harvey and offered a plea of guilty to the second count of the indictment, pertaining to the year 1968. The court accepted the guilty plea, sentenced respondent to imprisonment for one month, which he commenced to serve on December 3, 1973, and ordered that he thereafter be placed on probation for 23 months, whereupon the United States Attorney entered a *nolle prosequi* of the two remaining charges. In consequence of his conviction, respondent was, on January 30, 1974, disbarred from the practice of law before the United States District Court for the District of Maryland. This disciplinary proceeding followed.

After a petition for disciplinary action was filed by the Attorney Grievance Commission of Maryland, this Court passed an order on January 14, 1976, transmitting the charges to the Supreme Bench of Baltimore. The case was

heard, pursuant to Maryland Rule BV9 by a panel consisting of Judges Basil A. Thomas, Robert B. Watts and James W. Murphy of the Eighth Judicial Circuit of Maryland. Although no testimony was presented to the court, the transcript of testimony heard by a panel of attorneys designated by the Bar Association of Baltimore City, which had recommended that disciplinary action be instituted but that respondent receive a reprimand, was admitted in evidence by stipulation.

Thereafter, a memorandum opinion, containing findings of fact and conclusions of law, and the recommendation of the three-judge panel that respondent be suspended from the practice of law for one year, was filed in this Court in accordance with Rule BV11 a 1. No exceptions having been filed by either party within the prescribed time, we issued an order requiring respondent to show cause why he should not be disbarred or suspended from the practice of law for a period in excess of the one year recommended by the panel. The matter was thereafter heard by us, but we remanded the case to the same three-judge panel for the taking of additional evidence "bearing on whether extenuating circumstances exist[ed] in connection with respondent's conviction for failure to file . . . and particularly with respect to the respondent's medical condition during the period in question . . . ."

Subsequently, the panel heard testimony from two physicians who had attended respondent, from the I.R.S. agent who had investigated the tax case against him, and from the respondent himself. Dr. Philip Moore, who had seen respondent for the first time in 1973, had then found him suffering from obesity, hypertension, heart disease, narcolepsy and diabetes. The physician saw respondent on three additional occasions in 1973, but did not see him again until October 1976. On the last occasion, he recommended that respondent be hospitalized for treatment of his diabetes condition. The witness was unable to render an opinion concerning respondent's condition during the critical period of 1967-69. Dr. Harry Klinefelter testified that he had seen respondent a total of eight times between July 1966 and

March 1968, and once again in September 1971. He diagnosed respondent's condition as narcolepsy, a relatively rare disease, in which sleep comes suddenly and the patient is unable to prevent it. The prescribed treatment was benzedrine, an amphetamine. The witness stated, however, that although respondent required a "high" dosage, no side effects would have resulted.

Respondent, with some corroboration furnished by the I.R.S. agent, testified that during the period involved in the tax case he was providing substantial contribution to the support of a brother and his two sons, and his grandparents, who were his adoptive parents. Following the death of his grandmother in 1966, respondent provided all of the necessary financial care for his grandfather. He described in detail his various physical ailments, but since, as the panel found, those conditions were of "limited significance" in regard to the tax problems, we need not recount his testimony here.

Concerning his tax difficulties, respondent stated that he filed his first three quarterly returns for 1967, paying the appropriate amount in each instance. He then prepared his final return and wrote a check for the balance due, but did not mail it because he did not have sufficient funds to cover the payment. Shortly before that payment was due, his brother had required funds for his son's college tuition, and respondent had furnished the money. He knew then, however, that it would have been possible to avoid criminal prosecution by filing the return without making the payment. Beyond his financial difficulties, respondent was unable to offer any explanation for his failure to file the tax returns.

The testimony reveals that respondent earned the following gross income for the years relevant to the charges in the indictment: 1967, $11,450; 1968, $13,202; 1969, $9,543. The amount of his total tax liability at the time of the conviction in the federal court was $4,799 plus penalties and interest. He had paid approximately $1,600 toward this delinquency in 1974. All of his federal returns covering the period 1970 to date have been filed, though most have not

been accompanied by payment. It was disclosed for the first time at the hearing on remand that respondent had not filed his Maryland income tax returns since 1965.

In its supplemental opinion and recommendation, as we have indicated, the panel of judges below noted respondent's medical condition, but found it to be of "limited significance," since it had not been shown to interfere with his "functioning as an attorney." The panel adhered to its prior recommendation that respondent be suspended for one year, concluding that disbarment would be "too harsh a penalty," since respondent's failure to file was not "a result of a fraudulent or dishonest intent to avoid the payment of taxes." The panel gave no consideration to respondent's failure to file the Maryland returns, since neither criminal nor disciplinary charges had been filed on those grounds.

Petitioner filed exceptions to the panel recommendation, contending that respondent's failure to file the state returns was properly before the panel. Further, it argued, since the federal crime committed by respondent was one involving moral turpitude, the sanction to be imposed should be greater than the one-year suspension recommended by the panel. Respondent also noted exceptions and replied to those filed by petitioner. He contended that since the crime had been committed without fraudulent intent, being the result of his inability to pay the required sums, he should be subjected to a sanction of no greater severity than a reprimand.

Because of our holding in *Maryland St. Bar Ass'n v. Agnew*, 271 Md. 543, 550, 551, 553, 318 A. 2d 811 (1974), that absent compelling extenuating circumstances, disbarment of an attorney follows from conviction of a crime that involves moral turpitude and is characterized by dishonesty, fraud or deceit, *accord, Maryland St. Bar Ass'n v. Hirsch*, 274 Md. 368, 377, 335 A. 2d 108, *cert. denied*, 422 U. S. 1012 (1975); *Bar Ass'n of Balto. City v. Snyder*, 273 Md. 534, 536, 331 A. 2d 47 (1975); *Maryland St. Bar Ass'n v. Callanan*, 271 Md. 554, 556, 318 A. 2d 809 (1974), it first becomes necessary for us to decide whether the crime of which respondent was convicted was one involving moral turpitude. *Agnew*, of

course, involved the felony of willful tax evasion, as set forth in 26 U.S.C. § 7201, while respondent was convicted under § 7203 of willfully failing to file, a misdemeanor. We carefully noted in *Agnew* that we were not there addressing the sanction to be imposed in cases involving § 7203. *Maryland St. Bar Ass'n v. Agnew,* 271 Md. at 553 n. 8.

In only two reported decisions does it appear that we have been confronted in the disciplinary context with the lesser crime of failure to file. Although *Rheb v. Bar Ass'n of Baltimore,* 186 Md. 200, 46 A. 2d 289 (1946), has been read in some quarters to stand for the proposition that the crime of failing to file tax returns always involves moral turpitude, close examination of the opinion in that case reveals that the decision did not rest on that principle. In addition to being convicted for failure to make income tax returns for the years 1940, 1941 and 1942, Rheb admitted that he had not filed a return since the commencement of his law practice in 1932. The Court concluded that those admissions and Rheb's failure to keep records justified a finding that his purpose was to cheat the federal government and the State of Maryland. Moreover, Rheb was found to have been guilty of further professional misconduct relating to his participation in a fraudulent stock scheme and to a breach of a confidential relationship. While noting in dicta that "the authorities support the proposition that a crime of this character, even though not a felony, involves moral turpitude," the Court concluded "upon the whole case" that Rheb "ha[d] shown himself to be unfit for the further practice of law." *Rheb v. Bar Ass'n of Baltimore,* 186 Md. at 204, 209.[1]

---

1. In In re Hallinan, 43 Cal. 2d 243, 272 P. 2d 768, 774 (1954), *appeal after remand,* 48 Cal. 2d 52, 307 P. 2d 1 (1957), Justice Traynor, for the California Supreme Court, thrice referred to our "dictum." in Rheb v. Bar Ass'n of Baltimore, 186 Md. 200, 204-205, 46 A. 2d 289 (1946), "that a violation of [26 U.S.C. § 7203 (willful failure to file)] involves moral turpitude" (footnote omitted), but carefully noted that the holding of this Court "was squarely based on a Maryland statute that directs summary disbarment for 'conduct prejudicial to the administration of justice.' "

It is also worthy of note that in *Rheb* this Court cited three cases for the proposition "that a crime of this character, even though not a felony, involves moral turpitude": In re Diesen, 173 Minn. 297, 215 N. W. 427 (1927), *appeal after remand,* 173 Minn. 297, 217 N. W. 356 (1928), which was

Nor did we in *Bar Ass'n of Balto. City v. McCourt*, 276 Md. 326, 347 A. 2d 208 (1975), flatly decide the question. There we adopted the opinion of the three-judge panel as our own. In so doing, we did not reach the question of moral turpitude, although there is dictum in the adopted opinion which suggests *Rheb* as authority for the proposition that failing to file federal tax returns "involves fraud or deceit and moral turpitude." *Bar Ass'n of Balto. City v. McCourt*, 276 Md. at 331.

The term "moral turpitude" has been defined generally as importing "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Braverman v. Bar Assn. of Balto.*, 209 Md. 328, 344, 121 A. 2d 473, *cert. denied*, 352 U. S. 830 (1956). When applied to the context in which we deal with it here, the term connotes a fraudulent, *Iowa State Bar Association v. Kraschel*, 260 Iowa 187, 148 N.W.2d 621, 627 (1967), or dishonest, *Committee of Legal Ethics v. Scherr*, 149 W. Va. 721, 143 S.E.2d 141, 147 (1965), intent. As Justice Traynor said for the California Supreme Court in *In re Hallinan*, 43 Cal. 2d 243, 272 P. 2d 768, 771 (1954), *appeal after remand*, 48 Cal. 2d 52, 307 P. 2d 1 (1957):

> "Although the problem of defining moral turpitude is not without difficulty (citations omitted), it is settled that whatever else it may mean, it includes *fraud* and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude. (Citations omitted). It is also settled that the related group of offenses involving *intentional dishonesty* for purposes of personal gain are crimes involving

decided at a time when the federal statute specifically made *fraud* an element of the offense; In re Peters, 73 Mont. 284, 235 P. 772 (1925), which was based on a conviction for filing *false* reports as an officer of a bank with intent to *deceive* the U.S. Comptroller of the Currency; and In re Wiltse, 109 Wash. 261, 186 P. 848 (1920), in which an attorney was disbarred for soliciting business and filing *false* claims for exemption from selective service.

moral turpitude. . . ." (Citations omitted; emphasis added).

It is those characteristics, fraud, deceit and dishonesty, which identify the more serious offense of tax evasion as a crime involving moral turpitude. *See Maryland St. Bar Ass'n v. Agnew*, 271 Md. at 551.

Our inquiry into whether respondent stands convicted of a crime involving moral turpitude necessarily begins with an examination of the criminal statute itself, 26 U.S.C. § 7203 (1970), which, in relevant part, provides:

> "Any person required under this title to pay any estimated tax or tax, or required by this title . . . to make a return . . ., who willfully fails to pay such estimated tax or tax, [or] make such return . . ., shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution."

Manifestly, fraud is not explicitly made an element of the crime; therefore, the only question is the import of the word "willfully." Recent federal cases have been numerous in deciding that "willfully," as used in § 7203, requires only that the Government prove a voluntary, intentional violation of a known legal duty, *United States v. Pohlman*, 522 F. 2d 974, 977 (8th Cir. 1975) (en banc), *cert. denied*, 423 U. S. 1049 (1976); *United States v. McCorkle*, 511 F. 2d 482, 485 (7th Cir. 1975) (en banc), *cert. denied*, 423 U. S. 826 (1975); *United States v. Bengimina*, 499 F. 2d 117, 119 (8th Cir. 1974); *United States v. Hawk*, 497 F. 2d 365, 368 (9th Cir.), *cert. denied*, 419 U. S. 838 (1974); and that the failure to file was not through accident or mistake or other innocent cause, *United States v. Platt*, 435 F. 2d 789, 795 (2d Cir. 1970). Unlike the crime proscribed by § 7201, intent to defraud and to evade payment of taxes are not elements of the § 7203 crime, which is precisely why Congress chose to make the former a felony and the latter a misdemeanor,

*United States v. Lachmann,* 469 F. 2d 1043, 1045-46 (1st Cir. 1972), *cert. denied,* 411 U. S. 931 (1973); *United States v. Haseltine,* 419 F. 2d 579, 581 (9th Cir. 1970). Since we are dealing with a federal criminal statute, these decisions are authority for the proposition that fraud is not an element of a § 7203 conviction.

The question whether failure to file tax returns is per se a crime involving moral turpitude has been considered in a vast number of disciplinary cases and the courts have divided on the issue. Those courts which have held that every conviction of failure to file is per se an offense involving moral turpitude have done so by baldly arriving at that conclusion or by simply refusing to distinguish that crime from the § 7201 offense of making a false and fraudulent return, *i.e.,* willful tax evasion, *see, e.g., In re MacLeod,* 479 S.W.2d 443, 445 (Mo.), *cert. denied,* 409 U. S. 979 (1972); *In re Kline,* 156 Mont. 177, 477 P. 2d 881, 882 (1970); *State Bd. of Law Examiners v. Holland,* 494 P. 2d 196, 197 (Wyo. 1972), a distinction which, as we have suggested, even the federal courts make.

Most courts, however, hold that failure to file is not a crime involving moral turpitude per se, and that the issue turns on the facts of the particular case. They rest the proposition that not every such conviction involves moral turpitude either on the distinction between the two federal crimes or on the absence of fraudulent intent and further misconduct, or both, *See, e.g., In re Fahey,* 8 Cal. 3d 842, 505 P. 2d 1369, 1374-75, 106 Cal. Rptr. 313 (1973); *Kentucky State Bar Association v. McAfee,* 301 S.W.2d 899 (Ky. 1957); *Matter of Cochrane,* 549 P. 2d 328, 329 (Nev. 1976); *In re Ford's Case,* 102 N. H. 24, 149 A. 2d 863, 864 (1959); *Cincinnati Bar Assn. v. Leroux,* 16 Ohio St.2d 10, 242 N.E.2d 347, 348 (1968); *In re Walker,* 240 Ore. 65, 399 P. 2d 1015, 1016 (1965); *In re Weisensee,* 224 N.W.2d 830, 831 (S.D. 1975); *In re McShane,* 122 Vt. 442, 175 A. 2d 508 (1961); *Committee of Legal Ethics v. Scherr,* 143 S.E.2d at 145; *State v. Roggensack,* 19 Wis. 2d 38, 119 N.W.2d 412, 416 (1963). *See also In re O'Hallaren,* 64 Ill. 2d 426, 356 N.E.2d 520, 523, 1 Ill. Dec. 332 (1976).

There is a third line of cases in which the courts, though presented with the issue of whether failure to file was a crime involving moral turpitude, have found it unnecessary to decide the question, but nevertheless have proceeded to impose disciplinary sanctions. *See, e.g., People v. Fenton,* 165 Colo. 131, 437 P. 2d 350, 351 (1968); *In re Schub,* 54 Ill. 2d 277, 296 N.E.2d 738, 740 (1973), *Iowa State Bar Association v. Kraschel,* 148 N.W.2d at 628; *In re Bunker,* 294 Minn. 47, 199 N.W.2d 628, 631-32 (1972); *In re De Luca,* 112 R. I. 909, 308 A. 2d 826, 827 (1973); *In re Calhoun,* 127 Vt. 220, 245 A. 2d 560 (1968).

We think the better view is represented by the cases holding that not every conviction of failure to file is a crime involving moral turpitude, but that the issue depends on the particular facts of the individual case. As we have stressed, the federal cases have eliminated fraud and dishonesty, the very conduct by which we identify moral turpitude, as elements of the § 7203 crime. Consequently, such a conviction does not on its face establish moral turpitude. In the final analysis, then, whether failure to file is a crime involving moral turpitude hinges on the facts present in the individual case at hand. We turn then to the question whether the circumstances prevailing here reflect such conduct.

Here, as we have intimated, no evidence has been presented to show that respondent's failure to file the returns was accompanied by a fraudulent or dishonest intent. Nor does the record reflect an intent to avoid the ultimate payment of taxes. There is no suggestion, for example, that respondent falsified records, made deceptive statements to Internal Revenue agents, testified untruthfully, committed any other act of dishonesty, or was guilty of further misconduct. No evidence has ever been uncovered by either the I.R.S. or petitioner to refute respondent's explanation for his conduct: that it resulted from his inability to pay. In short, there is no further showing, beyond the bare fact of conviction for failure to file his returns, to indicate that respondent's conduct was infected with moral turpitude, as we have defined that term.

Nothing we have said is intended in the slightest degree to diminish the gravity of the crime involved here. It is, as we shall demonstrate, such conduct as may result in the imposition of any one of the sanctions prescribed by Rule BV11 a 1, that is, reprimand, suspension, or disbarment. The consequence of our holding is simply that disbarment does not automatically follow from every conviction for failure to file a federal tax return.

Our holding that respondent did not commit a crime involving moral turpitude is not, therefore, dispositive of this case. Under Maryland Code (1957, 1976 Repl. Vol.) Art. 10, §§ 13 and 16, the commission of a crime involving moral turpitude is merely one of the several enumerated grounds on which an attorney may be disciplined. *See Prince George's Co. Bar Ass'n v. Vance*, 273 Md. 79, 84, 327 A. 2d 767 (1974). Indeed, the petition for disciplinary action in this case relies not only upon the conviction of a crime involving moral turpitude, but also upon the alternative allegation that the failure to file represented conduct prejudicial to the administration of justice and conduct reflecting upon respondent's fitness to practice law within the contemplation of DR 1-102 (A) (5) and (6), as adopted in this state in Rule 1230. That respondent did commit the crime is conclusively established by the conviction. Rule BV10 e 1. That the crime of which respondent stands convicted represents conduct prejudicial to the administration of justice and, under the particular circumstances of this case, reflects upon his fitness to practice law is beyond debate, *In re Bunker*, 199 N.W.2d at 631-32; *see Committee of Legal Ethics v. Scherr*, 143 S.E.2d at 147. Accordingly, as the panel found, respondent is guilty of such misconduct as requires the imposition of a disciplinary sanction. *See In re Schub*, 296 N.E.2d at 740; *Iowa State Bar Association v. Kraschel*, 148 N.W.2d at 628.

We reject, however, the further contention advanced by petitioner that respondent's failure to file Maryland income tax returns since 1965, though not mentioned in the disciplinary charge brought against respondent and disclosed for the first time at the remand hearing before the

three-judge panel, should nonetheless have been considered in its recommendation of the sanction to be imposed. Implicit in this contention is a concession that failure to file the Maryland returns could not have become at that late hour in the proceedings one of the disciplinary charges itself. *Bar Ass'n v. Cockrell*, 274 Md. 279, 334 A. 2d 85 (1975), 270 Md. 686, 692-93, 313 A. 2d 816 (1974), stands for the proposition that the requirement of procedural due process, which is applicable in disciplinary proceedings, *see In re Ruffalo*, 390 U. S. 544, 551-52, 88 S. Ct. 1222, 20 L.Ed.2d 117 (1968), mandates sufficiently clear and specific notice of the charges being brought before disciplinary sanctions can be imposed against an attorney.

In this regard, we perceive no distinction between the charges themselves and the disciplinary sanctions. The ultimate objective of the petition is to determine whether such sanctions should be imposed, and procedural due process is no less critical at that final stage than it would have been earlier in the proceedings. Accordingly, the panel was correct in refusing to consider for any purpose the failure to file the Maryland returns, the disclosure of which was injected into the proceedings for the first time on cross-examination of respondent, the final witness to testify.

We turn then to the discipline to be imposed. In so doing, we remain mindful of what we said in *Maryland St. Bar Ass'n v. Agnew*, 271 Md. at 549:

"A Court has the duty, since attorneys are its officers, to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary procedures have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public. . . ." (Citation omitted).

An attorney's willful failure to file income tax returns may seriously impair public confidence in the entire profession. The need, therefore, to maintain public respect for the bar is

a vital consideration in the imposition of disciplinary sanctions. The lawyer, after all, is intimately associated with administration of the law and should rightfully be expected to set an example in observing the law. By willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above that law.

In addition to the two reported decisions we mentioned earlier, *Rheb v. Bar Ass'n of Baltimore* and *Bar Ass'n of Balto. City v. McCourt*, both *supra*, we have dealt with the crime charged here in two unreported cases since 1970, the year in which we assumed original and complete jurisdiction over disciplinary proceedings. In each of those two cases we adopted the recommendation of a three-judge panel that a one-year suspension be imposed. We subsequently did likewise in *McCourt*, where more extensive mitigating circumstances were established. The ultimate sanction of disbarment was imposed in *Rheb*, but there, as we have noted, the misconduct of the attorney extended well beyond his failure to file.[2]

---

2. Courts elsewhere, regardless of whether they viewed failure to file as a crime involving moral turpitude or not, or found it unnecessary to reach that question, have imposed a variety of disciplinary sanctions ranging from censure or reprimand to indefinite suspension. *See, e.g.*, People v. Fenton, 165 Colo. 131, 437 P. 2d 350, 351 (1968) (question of moral turpitude not reached; public censure); In re Schub, 54 Ill. 2d 277, 296 N.E.2d 738, 740 (1973) (question of moral turpitude not reached; six months' suspension); In re O'Hallaren, 64 Ill. 2d 426, 356 N.E.2d 520, 524, 1 Ill. Dec. 332 (1976) (no moral turpitude under circumstances; 18 months' suspension); Iowa State Bar Association v. Kraschel, 260 Iowa 187, 148 N.W.2d 621, 628-29 (1967) (question of moral turpitude not reached; two years' suspension and additional two years' probation); Kentucky State Bar Ass'n v. Vincent, 537 S.W.2d 171, 173 (Ky. 1976) (no "infamous" crime under circumstances; six months' suspension); In re Lewis, 394 Mich. 224, 229 N.W.2d 316, 317-18 (1975) (question of moral turpitude not reached; 130 days' suspension); In re Bunker, 294 Minn. 47, 199 N.W.2d 628, 632-33 (1972) (question of moral turpitude not reached; probation for three years or until such time as all tax obligations are paid); In re MacLeod, 479 S.W.2d 443, 445 (Mo.), *cert. denied*, 409 U. S. 979 (1972) (moral turpitude per se; indefinite suspension with leave to apply for reinstatement after expiration of 18 months); In re Kline, 156 Mont. 177, 477 P. 2d 881, 882 (1970) (moral turpitude per se; indefinite suspension); Matter of Cochrane, 549 P. 2d 328, 330 (Nev. 1976) (no moral turpitude under circumstances; payment of $2500 to Client's Security Fund and $1000 to State Bar); St. Pierre's Case, 113 N. H. 198, 304 A. 2d 88, 89 (1973) (question of moral turpitude not reached; 90 days' suspension); In re Mahon, 15 App. Div.2d 232, 223 N.Y.S.2d 338, 341 (1962) (question of moral turpitude not reached; censure); Matter of Fosaaen, 234 N.W.2d 867, 869 (N.D. 1975) (moral turpitude under particular circumstances; 105 days'

Respondent concedes not only that he diverted to personal or family use the very funds with which he might have paid part, if not all, of the taxes which he owed, but also that he could have avoided criminal prosecution, in any event, by merely filing his returns as required by law. This case therefore lacks the mitigating circumstances found in *Bar Ass'n of Balto. City v. McCourt*, 276 Md. at 330, in which the testimony of a psychiatrist revealed that the criminal conduct was related to a "passive-aggressive" neurotic personality disorder.

On this record, we agree with the panel below that disbarment is not warranted, but we conclude that the purposes to be served by these disciplinary proceedings will be met by a suspension of three years commencing on July 11, 1977.

*It is so ordered.*

*Murphy, C. J., dissenting*:

I agree with the majority that *Rheb v. Bar Ass'n of Baltimore*, 186 Md. 200, 46 A. 2d 89 (1946), does not mandate, as an immutable rule of law, that wilful failure to file income tax returns is a crime which always involves moral turpitude; it may or may not, depending upon the facts and circumstances of the particular case. Where, however, the facts show that wilful failure to file a tax return was "for the purpose of cheating the Government," the crime is one which does involve moral turpitude; our predecessors

suspension "and thereafter until reinstated"); Cleveland Bar Association v. Stein, 29 Ohio St.2d 77, 278 N.E.2d 670, 673 (1972) (question of moral turpitude not reached; indefinite suspension); In re Walker, 240 Ore. 65, 399 P. 2d 1015, 1016 (1965) (no moral turpitude under circumstances; two years' suspension); In re De Luca, 112 R. I. 909, 308 A. 2d 826, 827 (1973) (question of moral turpitude not reached; suspended until further order of court, subject to application for reinstatement in six months); In re Weisensee, 224 N.W.2d 830, 832 (S.D. 1975) (no moral turpitude under circumstances; complaint dismissed); In re Calhoun, 127 Vt. 220, 245 A. 2d 560, 561 (1968) (question of moral turpitude not reached; four months' suspension); Committee of Legal Ethics v. Scherr, 149 W. Va. 721, 143 S.E.2d 141, 148 (1965) (no moral turpitude under circumstances; one month's suspension); State v. Roggensack, 19 Wis. 2d 38, 119 N.W.2d 412, 418 (1963) (no moral turpitude under circumstances; reprimand); State Bd. of Law Examiners v. Holland, 494 P. 2d 196, 197 (Wyo. 1972) (moral turpitude per se; one year's suspension followed by four years' probation).

specifically so stated in interpreting the import of *Rheb* in *Braverman v. Bar Assn. of Balto.*, 209 Md. 328, 345, 121 A. 2d 473, 481 (1956).

I disagree with the majority that there was no evidence in Walman's case that his failure to file was accompanied either by a fraudulent or dishonest intent or that he intended to avoid the "ultimate" payment of taxes. In my view, the record before us cries out for a determination that it was Walman's deliberate intention in not filing tax returns to cheat the government and his fellow citizens by avoiding payment of his proper share of the income tax burden. To conclude, as the majority has, that Walman's failure to file is attributable solely to his inability to pay, and hence is an offense which does not involve moral turpitude, is to lose sight of the wise admonition in *Berry v. State*, 202 Md. 62, 67, 95 A. 2d 319, 321 (1953), that "An indispensable ingredient in judgment, in court as well as out of it, is a modicum of common sense." I, therefore, dissent from the majority's holding that Walman's offense did not, on the facts of this case, involve moral turpitude.

Both Rheb and Walman had full knowledge of the requirement to file tax returns and each understood that a tax return could be filed without remitting the tax due. Like Rheb, Walman was charged with failing to file federal income tax returns for a three-year period and each was convicted on one count. Rheb admitted at his disciplinary hearing that he had not filed federal or state tax returns for a total of 10 years prior to his indictment. Walman admitted that he had not filed his state income tax returns for 10 years, beginning in 1965. Rheb was disbarred. The Court held, in the circumstances, that Rheb's offense involved moral turpitude since he "deliberately failed to make returns or keep records, for the purpose of cheating the Federal Government and the State of Maryland out of taxes justly due." 186 Md. at 204, 46 A. 2d at 291. The same holding is compelled in Walman's case.

While fraud may not be an actual element of the crime of which Walman was convicted, it is clear, as the majority acknowledges, that a voluntary, intentional violation of the

known duty to make a federal income tax return is requisite to conviction (as contrasted with failure to file through accident, mistake or other innocent cause).

Walman's failure to file federal tax returns for 1967, 1968 and 1969 was not discovered by reason of any voluntary disclosure on his part, but rather as a result of governmental investigation. His failure to file state income tax returns for 10 years was revealed, for the first time, on his cross-examination at the remand hearing. That Walman knew that he was required to file tax returns but need not then remit the tax due is conceded — indeed at one time Walman was employed by H & R Block Company as a tax specialist. These are facts and circumstances which shed light on, and lend meaning to, Walman's purposeful conduct in not filing his income tax returns; they spell out, in my judgment, a deliberate and unmistakable intention to cheat the government.

Because Walman's failure to file Maryland income tax returns was not made a specific charge against him in the disciplinary proceedings, the majority holds that it cannot, consistent with procedural due process requirements, consider the effect of this evidence in assessing the disciplinary sanction to be imposed. It relies on *In re Ruffalo*, 390 U. S. 544, 88 S. Ct. 1222, 20 L.Ed.2d 117 (1968), and *Bar Ass'n v. Cockrell*, 270 Md. 686, 313 A. 2d 816 (1974). Neither of these cases is apposite to the facts of this case.

As we pointed out in *Bar Ass'n v. Cockrell*, 274 Md. 279, 334 A. 2d 85 (1975), *Ruffalo* involved the disbarment of a lawyer for misconduct for which he had not been originally charged, but which was revealed for the first time by testimony at his disciplinary hearing. As a result, the disciplinary charges were amended to include the additional misconduct, and although the attorney was afforded a continuance to prepare a response to the new charge, the Supreme Court held in reversing the disbarment order, that he had been deprived of due process because there was an "absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges." 390 U. S.

at 552, 88 S. Ct. at 1226, 20 L.Ed.2d at 123. The Supreme Court said:

> "The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh." 390 U. S. at 551, 88 S. Ct. at 1226, 20 L.Ed.2d at 122.

We said in *Cockrell*, 274 Md. at 286, 334 A. 2d at 88, that "if *Ruffalo* is strictly applied as it literally reads, then its broad holding would have a crippling effect on the primary purpose of disciplinary proceedings . . . ." We nevertheless applied *Ruffalo's* principles in *Cockrell* since, on the facts, the two cases could not be distinguished. We were careful to point out, however, that our reliance on *Ruffalo* "is not to be construed as having any import beyond the particular procedural posture that evolved in this case." 274 Md. at 287.

I think the majority is unwisely and unnecessarily extending *Ruffalo* in this case. Unlike the facts in *Ruffalo* and *Cockrell*, no new charges of misconduct were filed against Walman as a result of his testimony at the remand hearing. We are not, therefore, concerned with whether he had notice that his newly revealed misconduct would be charged as a new and separate charge, or whether lack of notice resulted in serious prejudice to his defense, as in *Cockrell* and *Ruffalo*. That Walman failed to file his state income tax returns for 10 years is plainly relevant and proper evidence to be considered in determining whether failure to file his 1968 federal return, for which he was convicted, as well as his 1967 and 1969 federal returns, was with an intent to cheat the government and thus involved moral turpitude. In other words, nothing in *Ruffalo* or *Cockrell* precludes the use of Walman's self-incriminatory statements of uncharged crimes or misconduct in assessing the real import of his conduct with respect to the charges under consideration. That this evidence may tend to prove Walman guilty of a crime other than the one for which he

was convicted does not render it inadmissible, or its use a denial of procedural due process. It is well settled that while guilt cannot be established by proving that the accused has committed other crimes, evidence of acts may be admitted to show motive, intent, absence of mistake or accident, or a common scheme. *Ross v. State*, 276 Md. 664, 350 A. 2d 680 (1976); *King v. State*, 190 Md. 361, 58 A. 2d 663 (1948); *Purviance v. State*, 185 Md. 189, 44 A. 2d 474 (1945).

I conclude that Walman's conviction for wilful failure to file his 1968 federal income tax return, considered in the light of the total circumstances revealed by the record, involved moral turpitude since his intention was to cheat the government out of taxes justly due. As to the degree of discipline for which Walman should be subjected, we said in *Maryland St. Bar Ass'n v. Agnew*, 271 Md. 543, 318 A. 2d 811 (1974):

> "[W]hen a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances, ... disbarment follow[s] as a matter of course." 271 Md. at 553, 318 A. 2d at 817.

There being no compelling extenuating circumstances in this case, I think the only appropriate sanction is disbarment.

Judges Smith and Digges authorize me to say that they concur in the views expressed in this dissent.

*Smith, J., dissenting*:

I concur in the dissent of Chief Judge Murphy. I would add a few additional words, however.

The majority opinion has concluded, "That the crime of which respondent stands convicted ... reflects upon his fitness to practice law is beyond debate ...."

Those who have had any connection with grievance procedures against lawyers will attest to the fact that the

greatest single cause of complaint is procrastination.[1] We have referred repeatedly to the Lord Mansfield rule enunciated in *Ex parte Brownsall*, 2 Cowp. 829 (1778):

> "The question is, whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion. * * * It is not by way of punishment; but the court, in such cases, exercise their discretion whether a man whom they have formerly admitted is a proper person to be continued on the roll or not."

*See, e.g., Bar Ass'n of Balto. City v. Posner*, 275 Md. 250, 255, 339 A. 2d 657 (1975); *In re Barton*, 273 Md. 377, 381, 329 A. 2d 102 (1974); *Maryland St. Bar Ass'n v. Sugarman*, 273 Md. 306, 316, 329 A. 2d 1 (1974), citing *In re Rouss*, 221 N. Y. 81, 84-85, 116 N. E. 782 (1917), an opinion by then Judge Cardozo; *Balliet v. Balto. Co. Bar Ass'n*, 259 Md. 474, 478, 270 A. 2d 465 (1970); and *In re Meyerson*, 190 Md. 671, 675-76, 59 A. 2d 489 (1948), to name but a few. It was more succinctly put by Judge Singley for the Court in *Posner* when he said that "the purpose of the proceeding [is] to protect the public by determining a lawyer's fitness to practice law . . . ."

When a lawyer so neglects his own affairs as to fail for three successive years to do that which every citizen of this republic knows that he must do if his income is more than a mere pittance, namely to file an income tax return, then I conclude that he has demonstrated that he is not the type of person to whom we may in confidence entrust the handling of the affairs of others. I would disbar. Therefore the above is an additional reason for disbarment.

Chief Judge Murphy and Judge Digges authorize me to say that they concur in the views here expressed.

---

1. *See, e.g.*, report of the Chairman of the Attorney Grievance Commission to the Maryland State Bar Association, Daily Record June 16, 1976, p. 1 in which he said:

> "As a matter of interest, the largest number of complaints involve undue delay, lack of communication and fee disputes, all of which can be prevented by a careful lawyer."